Schiff Hardin

Schiff Hardin LLP
901 K Street NW
Suite 700
Washington, DC  20001

T 202.778.6400
F 202.778.6460

schiffhardin.com

April 22, 2016

**Jeffrey David Skinner**
202.778.6427
jskinner@schiffhardin.com

**VIA ECF**

The Honorable J. Mark Coulson
United States Magistrate Judge
United States District Court for the District of Maryland, Baltimore Division
101 W. Lombard Street
Baltimore, Maryland, 21201

Re:     <u>Callahan v. Pacific Cycle et al, 1:15-cv-02815</u>

Dear Judge Coulson:

Pursuant to your order following the discovery conference held on April 18, 2016, please find below a more detailed description of the outstanding discovery issues.  In addition to the issues discussed below, we understand that the Court will address Defendants' Motion to Strike the untimely opinions of Dr. Jeffrey Price separately after briefing is completed by the parties.

1. **<u>Deposition of Pacific Cycle's Corporate Representative.</u>**

   Defendants worked in good faith to produce a corporate representative of both Toys "R" Us and Pacific Cycle within the discovery period.  On January 19, 2016, Plaintiffs served notices for the depositions of a corporate representative of Toys "R" Us and Pacific Cycle.  Each notice contained 30 broad topics.  The next week, Defendants' counsel called Plaintiffs' counsel to clarify the scope of the topics and to discuss the timing of these depositions.  Because Plaintiffs had not yet served written discovery on either of the defendants and the plaintiffs themselves had not yet been deposed, Plaintiffs' counsel agreed that it made sense not to attempt to schedule the corporate representative depositions until after Defendants responded to written discovery. Plaintiffs served Interrogatories and Requests for Production on Defendants on January 27, 2016.

   Defendants requested a two-week extension of time to respond to discovery, which Plaintiffs granted.  On February 29, 2015, Plaintiffs' counsel requested that Defendants designate and provide dates for the corporate representatives of Toys "R" Us and Pacific Cycle.  Pacific Cycle's representative with the most knowledge regarding the issues pertinent to this case is Joseph Werwie III, Global Director of Product Development.  Defendants' counsel contacted Mr. Werwie, who informed her that he would be traveling within the country and in Asia through early May and would be unavailable for his deposition until then.  On March 16, 2016, Defendants' counsel informed Plaintiffs that Pacific Cycle's corporate representative would be unavailable until early May, but that Defendants would not object to Plaintiffs deposing him outside of the discovery period.  Defendants have offered May 10th and 11th as dates for Mr. Werwie's deposition, but Plaintiffs' counsel has refused to accept them.

April 22, 2016
Page 2

Defendants also designated Mr. Armando Arroyo as Toys "R" Us's corporate representative. Under the Federal Rules of Civil Procedure, Defendants could have required Plaintiffs' counsel to travel to New Jersey, where Toys R Us is headquartered, for this deposition. But Defendants agreed to produce Mr. Arroyo in Baltimore as an accommodation to Plaintiffs' counsel. Mr. Arroyo was deposed on April 8, 2016.

Defendants have been reasonable in working to schedule and produce corporate representatives of both Toys "R" Us and Pacific Cycle. But, because Plaintiffs did not request dates for these depositions until just over a month remained until the discovery deadline, Mr. Werwie could not be deposed before discovery closed. Because Defendants acted reasonably and Plaintiffs own actions are partially responsible for the delay, the Court should not strike Pacific Cycle's corporate representative. Instead, the Court should order that Mr. Werwie be deposed on May 10, May 11, or some other date that is mutually agreeable to the parties.

2. **Deposition of S.W.**

Defendants also tried to schedule S.W.'s deposition during the discovery period, but were unable to do so. S.W. was allegedly with T. G. at the time of the bicycle accident. Although Plaintiffs disclosed that S.W. may have witnessed the accident, Defendants initially did not believe her deposition was necessary. But it became necessary 1) after Plaintiffs disclosed Dr. Price's new opinions on March 7, 2016 that significantly increased the damages at issue and 2) Defendants' expert testified on March 18, 2016, that T.G.'s recent deposition testimony suggested the accident may not have occurred the way Plaintiffs had initially claimed.

On March 22, 2016, Defendants' counsel asked Plaintiffs whether they represented S.W. and then for her contact information (which Plaintiffs did not provide in response to Defendants' discovery). On March 28, 2016, Plaintiffs gave Defendants S.W.'s mother's phone number. Defendants' counsel immediately called the mother, who informed her that S.W. was out of the country on a mission trip and would not return until April 7, 2016. Defendants served a notice of deposition for S.W. on April 1, 2016, explaining that she was out of the country and setting her deposition for the first mutually convenient date after her return. Although Ms. Williamson agreed to contact Defendants' counsel as soon as S.W. returned from her trip to schedule the deposition, she did not, and Defendants' counsel has not yet been able to reach her.

The need for S.W.'s deposition arose due to recent events that occurred shortly before the close of discovery. Defendants made every effort to schedule her deposition before discovery closed. But, due to S.W.'s travel schedule, Defendants were unable to do so. As a result, this Court should permit Defendants to take S.W.'s deposition over Plaintiffs' objection.

3. **Additional Medical Records for T.G.**

Plaintiffs have also refused to provide a release so that Defendants can obtain pre-accident medical records for T.G. that they requested in their first set of Requests for Production on October 20, 2015. Plaintiffs objected to producing medical records from before the accident, and Defendants agreed that they would not seek these records unless they became necessary.

April 22, 2016
Page 3

It subsequently became clear that the issue of whether T.G. was too small for the bicycle she was riding would be central to the case. Defendants initially hoped that the records Plaintiffs would provide from immediately after the accident would show T.G.'s height at the time. However, none of these records did, and Defendants renewed their request for records that would show T.G.'s height from the time of the sale of the bicycle and the time of the accident.

Plaintiffs told Defendants they would let them know about these records. On the day discovery closed, Plaintiffs informed Defendants they would not provide these documents and told Defendants to subpoena them. To comply with HIPPA, Defendants requested a release for these medical records signed by Ms. Callahan. Plaintiffs originally told Defendants they would send one to Ms. Callahan for her signature, but then refused to do so. Given their refusal, Defendants must now involve the Court and obtain an order for release of medical records. Defendants request that this Court require Ms. Callahan to sign a release for these medical records or grant a Motion for an Order for the Release of Medical Records that Defendants will file.

4. **Plaintiffs' Motion to Compel.**

Plaintiffs have made a number of complaints about Defendants' responses to discovery. Two days after receiving Plaintiffs' lengthy and confusing list of issues with the responses, Defendants' counsel spent nearly an hour on the phone with Plaintiffs' counsel attempting to resolve them. Defendants agreed to provide supplemental responses and additional documents to address the majority of Plaintiffs' complaints. However, there are four issues that will likely require involvement by the Court. Defendants do not believe Plaintiffs are entitled to the following:

1. Complaints related to other models of bicycles;
2. Contact information for current and former Toys "R" Us employees;
3. Information about the Toys "R" Us "Ready to Ride" program from after the sale of the subject bicycle; and
4. Information or documents that are not in Pacific Cycle's or Toys "R" Us's possession, custody, or control.

First, Defendants object to producing complaints related to any other model of bicycle because other models do not have the same allegedly injury-causing component. *See, e.g., Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 602 (D. Md. 2009) (denying discovery on complaints related to models that did not involve the same injury-causing component); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 383 (8th Cir. 1992) (affirming denial of discovery as to predecessor designs of truck at issue in case). Plaintiffs allege that the back brake cable was too long and had too much bend in it, which caused excessive cable drag and braking force. Other Pacific Cycle bicycle models would not share the cable routing that Plaintiffs claim caused the injury in this case, and complaints related to other bicycle models are therefore irrelevant. This Court should limit discovery to complaints related to the model of bicycle at issue.

Second, Defendants object to providing the contact information of current and past Toys "R" Us employees. Toys "R" Us provided Plaintiffs with a list of past and present employees who

April 22, 2016
Page 4

worked at the store where the bicycle was purchased. Toys "R" Us did not object to Plaintiffs contacting these individuals, but requested that they do so through counsel. Courts prohibit *ex parte* conversations with current or past employees whose actions may be the basis of the litigation or who have knowledge of confidential business information. *Camden v. State of Md.*, 910 F. Supp. 1115, 1122 (D. Md. 1996) (prohibiting *ex parte* communications with past employees who have confidential information); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 911 F. Supp. 148, 154 (D.N.J. 1995) (prohibiting *ex parte* communication with former employees who may have knowledge of the facts giving rise to the litigation). The listed employees may have been involved in or have knowledge of the assembly of the bicycle, which is central to Plaintiffs' claims. They also have knowledge of Toys "R" Us's confidential business standards and procedures for bicycle assembly. This Court should require Plaintiffs to contact these individuals through Defendants' counsel.

Third, Defendants object to producing documents or information related to the Toys "R" Us "Ready to Ride" program from after the sale of the bicycle. Plaintiffs allege that the "Ready to Ride" program by which Toys "R" Us marketed its pre-assembled bicycles was an express warranty that the bicycle at issue was "ready to ride." A representation that occurs after sale cannot be an express warranty. *See Michigan Dessert Corp. v. A.E. Staley Mfg. Co*., 46 UCC Rep. Serv. 642, 23 Fed Appx. 330 (6th Cir. 2001) (statements made after the bargain "is no longer in process" cannot give rise to express warranties because they are not part of the "basis of the bargain"); *see generally*, Md. Code Ann., Commercial Law, § 2-313 (express warranties only arise concerning matters that become part of the "basis of the bargain"). Any advertising related to this program from after the sale of the bicycle is therefore irrelevant, and this Court should not require Defendants to produce it.

Finally, Plaintiffs' remaining complaints about Defendant's discovery responses seem to be that they wish information or documents from nearly five years ago were available. However, Defendants have produced the principal documents responsive to Plaintiffs' discovery requests that remain and provided the information in their possession, custody, or control. They have no ability or obligation to do more.

Defendants' objections are presented in more detail in the attached Response to Plaintiffs' Draft Motion to Compel.

5. **Additional Expert Reports.**

During the court-mandated settlement conference in this case, Judge Copperthite indicated to Defendants' counsel and client representative that Plaintiffs had shown him a report from Plaintiffs' bicycle expert that contained charts and graphs of testing their expert did to determine the braking force of the back brake. Plaintiffs' expert did not conduct any testing related to the braking force of the back brake within the expert disclosure deadlines, nor have Plaintiffs provided this report to Defendants. Judge Copperthite also referenced a report by Dr. Price in which he explained the bases for his untimely opinion that T.G. will require approximately $88,000 in additional dental procedures in the future in connection with her injury. This report has not been provided to Defendants. When Defendants contacted Plaintiffs to request these

       reports shown to Judge Copperthite, Plaintiffs' counsel claimed they did not exist. This Court should limit Plaintiffs' experts to testifying about opinions that were timely disclosed in accordance with the scheduling order.

If the Court requires additional information about the discovery issues addressed above, Defendants are happy to provide any other information they can. Similarly, should the Court wish to discuss these issues in more detail, Defendants will make themselves available at the Court's convenience.

Sincerely,

    /s/ Jeffrey D. Skinner

Jeffrey D. Skinner

cc: all counsel of record via CM/ECF