IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VIRGINIA CALLAHAN, et al, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 15-2815-JKB |
| TOYS "R" US-DELAWARE, INC., et al, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This case has been referred to me for all discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 31.) Presently pending is Plaintiffs' Motion to Compel Discovery (ECF No. 42-1). The Motion has been fully briefed (ECF Nos. 42-2, 42-3), and no hearing is necessary, Loc. R. 105.6 (D. Md. 2014). Plaintiffs' Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART.

This case involves allegations of (1) strict liability for a defect in manufacturing, (2) negligence, (3) negligent misrepresentation, (4) breach of implied warranty of merchantability, (5) breach of express warranty, and (6) negligent hiring, supervision, and retention brought by Plaintiffs, T.G., a minor, and her grandmother Virginia Callahan, against Toys "R" Us-Delaware, Inc. ("Toys R Us"), and Pacific Cycle, Inc. ("Pacific Cycle"). Plaintiffs' allegations stem from a bicycle accident during which T.G. was riding a bicycle designed and manufactured by Pacific Cycle and sold and assembled by Toys R Us through its "Ready to Ride" program. (Am. Compl. ¶¶ 10-13.) Plaintiffs allege a failure in the final assembly process of the rear brake system resulting in the rear brake failing to function and causing the accident. (Am. Compl. ¶ 21.) Based on Plaintiffs' expert disclosure, it appears as though the allegedly improper assembly

involved the length of the brake cable and/or the routing of that cable between the rear brake and the brake control on the handlebars. (ECF No. 42-2, Exhibit G.)[1]

Although Plaintiffs' Motion initially set forth a large number of specific complaints related to Defendants' responses to interrogatories and requests for production of documents, it appears from Defendants' Opposition and Plaintiffs' Reply that many of those issues have been resolved by the parties and do not require Court intervention. However, the parties continue to dispute whether three categories of information are discoverable: (1) information related to complaints Defendants have received related to the rear brake system assembly; (2) contact information of former Toys "R" Us employees and (3) information and documents concerning Toys "R" Us' "Ready to Ride" program dated after the sale of the subject bicycle in this case. I will address each category in turn.

**1.    Information Related to Complaints Defendants Have Received Related to Rear Brake System Assembly**

Plaintiffs first seek documentation of complaints Defendants have received related to improper rear brake system assembly. Specifically, Plaintiffs' Request for Production Number 11 sought from both Pacific Cycle and Toys R Us:

> All documentation of any complaints and/or adverse event reports regarding the rear system brakes that you have received about The Product and/or similar products with the same or similar rear brake system, including the date received and the person(s) who submitted the complaint.

(Pls.' Mot. at 26-27, 30.) In response to the request, both Defendants objected to the request

> As vague as to "similar products" or "similar rear brake system" and overly broad and seeking irrelevant information to the extent it is not limited to bicycles of the same design as Plaintiffs' bicycle with the same alleged defect as Plaintiffs bicycle or seeks information from after the date of the accident. [Defendants]

---

[1] A cable-controlled brake system is common on bicycles and relies, in part, on the cable between the hand control and the rear brake being the proper length so that as one end of the brake cable is "pulled" by the hand control, the other end of the cable forces the brake calipers to close with the appropriate amount of force to slow and stop the back wheel of the bicycle. A cable that is too long or too short impairs the rear brake's function.

> further object[] to producing documents protected by the attorney-client or work product doctrines.

(*Id.* at 27, 30.) Plaintiffs' Motion to Compel clarified that the "alleged defects" for which it sought related documents were "defects in bicycles' rear brake system assembly." (*Id.* at 27, 31.) Plaintiffs assert that these documents will demonstrate that Defendants were on notice of prior instances of improperly assembled bicycles, which is relevant to their claim that Defendants negligently failed to adequately train and supervise Toys R Us employees who undertook the final assembly process for the subject bicycle. (Pls. Reply at 2.) Defendants object to this request, claiming that Plaintiffs seek complaints not related to the specific bicycle model at issue here, and that other bicycle models do not contain the same rear brake cable routing pathway, such that the complaints are not relevant and the request is not reasonably calculated to lead to the discovery of admissible evidence.

The most recent changes to Rule 26 of the Federal Rules of Civil Procedure emphasize that to fall within the scope of permissible discovery, the information sought must be both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). As no specific arguments have been included on the issue of proportionality, the Court will focus on relevance. The burden is on the party resisting discovery to establish that the documents are not relevant. *Desrosiers v. MAG Indus. Automation Systems, LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009). Potentially, an incident involving the same or similar alleged defect or act of negligence involving the same or similar product occurring prior to the incident in question would be relevant on the issue of whether Defendants were on notice of potential training or instructions issues in the way bicycles were being assembled. A failure to act on that information in a timely fashion would be relevant to the issue of the failure of the final assembly process of the rear

brake system alleged here. The main resistance from Defendants stems from the appropriate "same or similar" criteria to be used.

To determine whether documentation of other incidents is within the scope of discovery, this Court has applied a "relaxed substantial similarity" analysis, "viewing the relevance of the requested discovery liberally." *Id.* at 602. The analysis compares the "salient characteristics" of the incidents, the circumstances giving rise to the incidents, and if the incidents involve different models, whether the models share "characteristics pertinent to the legal issues." *Id.* (quoting *Bryte v. Am. Household, Inc.*, 429 F.3d 469, 479 (4th Cir. 2005); *Rye v. Black & Decker Mfr. Co.*, 889 F.2d 100, 102 (6th Cir. 1989); *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 441 (S.D.N.Y.1990)). I find that with respect to the same or similar bicycle model that employs the same or similar cable-controlled rear brake system, complaints concerning the assembly of that system received prior to the incident at issue are relevant to Plaintiffs' theory that Defendants were on notice of prior instances of improperly assembled rear brakes.[2]

Defendants argue that "similar models" with linear pull brake systems should not be included because "[t]he way the brake cable is routed on the model at issue and interacts with the brake system and the bicycle is unique to the subject model." (Defs.' Opp. at 5.) At the discovery stage, this is too fine of a distinction. For example, if the issue in this case resulted, hypothetically, from allowing too much cable length, how the cable is routed would be less important than what steps an assembler took after routing to ensure that the brake was cabled (and indeed worked) appropriately. Even if other incidents were unrelated to cable routing altogether, a failure to test the rear brake system after assembly to verify proper functioning

---

[2] I note that the Court would be disinclined to order production of a more generalized request for all assembly-related complaints. If, for example, Defendants were on notice of recurrent issues with handle bar assembly, that component (and its assembly) is sufficiently different from rear brakes that any steps Defendants may have been expected to take to rectify improper handle bar assembly would be unlikely to have any effect on rear brake assembly.

might well by itself be relevant to Defendants' assembly standard of care. Although Defendants' argument may result in a different outcome under the more strict "substantial similarity" test that will later govern the admissibility of these incidents at trial, under the more relaxed analysis at this stage, incidents involving the same or similar bicycles with the same or similar rear brake systems are relevant. After reviewing Plaintiffs' requests and interrogatories on this point, I am satisfied that Plaintiffs' requests—for complaints related to the same or similar product with the same or similar rear brake system—paired with Plaintiffs' clarification that they only seek documents specifically related to "defects in bicycles' rear brake system assembly," are sufficiently tailored and within the proper scope of discovery.[3] Given Defendants' familiarity with their own products, I will leave it to Defendants to decide in light of the guidance above which models are functionally "the same or similar" and which rear brake systems fit the production criteria. I would note as a point of clarification, that a purely cosmetic difference does not render dissimilar a bicycle that is otherwise similar. Additionally, the same or similar rear brake system will be understood to encompass "linear pull brake systems," which is the term Defendants employed to describe the brake system of the bicycle in this case. (Defs.' Opp. at 5.) Complaints unrelated to a failure of the rear brake system due to improper assembly need not be included. Finally, Defendants' general argument concerning the burden imposed by the unlimited timeframe of Plaintiffs' request is not supported by any specific indications of burden.

---

[3] Defendants' argument that granting Plaintiffs' Motion is analogous to requiring a car manufacturer to provide all complaints related to all of its cars that have automatic transmissions is unavailing. Plaintiffs do not seek all complaints for bicycles that have similar rear brake systems. Rather, this clarification limits their request to complaints that are materially related to the assembly of the rear brake system—which should somewhat, if not substantially, limit the number of responsive documents.

Nonetheless, the more remote the complaint, the less relevant. Accordingly, I will limit the production timeframe to complaints received three years prior to the incident in question.[4]

**2.     Contact Information of Former Toys "R" Us Employees**

Next, Plaintiffs seek contact information for certain current and former Toys R Us employees.[5] Specifically, Plaintiffs' Interrogatory Nos. 3 and 18 to Toys R Us ask it to identify and give contact information for people with "personal knowledge of the material facts in this matter," and "with the most knowledge pertaining to the assembly of The Product and its rear brake system who worked for you during the times you produced promoted, formulated, sold, assembled, inspected and/or tested The Product and its rear brake system," respectively. (Pls.' Mot. at 14, 21.) Defendants have apparently provided Plaintiffs with the identity of the applicable individuals but have declined to provide the requested contact information, instead asking Plaintiffs to communicate with the individuals only through defense counsel. Plaintiffs' reply memorandum specifies that it seeks the contact information of at least six former employees for the purpose of conducting informal interviews to ascertain the extent of the employees' knowledge as it pertains to this case.

Defendants object to providing the contact information of these individuals, claiming that because the individuals are former employees who have been exposed to confidential information, namely the Toys R Us Standard Operating Procedures, Plaintiffs' counsel are prohibited from contacting them under the Maryland Rules of Professional Conduct. (Defs.' Opp. at 6-8.) Defendants do not, however, claim that the contact information of these

---

[4] Pacific Cycle Interrogatory No. 18 and Toys R Us Interrogatory No. 20 request the same information. (Pls.' Mot. at 11, 21.) To the extent that Plaintiffs also seek to compel Defendants to answer those interrogatories, their motion is granted subject to the same limitations.

[5] From the parties' briefing, it does not appear that Plaintiffs seek the contact information of any current employees for the purpose of engaging in ex parte communications with those employees. However, to the extent Plaintiffs do seek to communicate with current employees, they should do so through counsel.

individuals itself is otherwise irrelevant or outside of the scope of discovery. With respect to Defendants' argument that Plaintiffs intend to violate the Rules of Professional Conduct, I will follow the lead of Judge Bredar in *Rogosin v. Mayor and City Council of Baltimore*, 164 F. Supp. 2d 684, 686 (D. Md. 2001), and decline to issue an advisory opinion regarding whether Plaintiffs' intended use of the former employees' contact information will constitute a violation of Maryland Rules of Professional Conduct 4.2 and 4.4. It is clear that a categorical approach to contacting former employees is inappropriate since the Court can envision some former employees where such contact may well be appropriate and some where it clearly would not. *Id.* at 687. Thus, from a prospective standpoint, the Court is simply not in the best position to determine the extent of each of the former employees' knowledge of confidential matters and whether or not any particular contact would or would not violate the Maryland Rules of Professional Conduct. *See Id.* The Court also recognizes that contact information may be necessary if Plaintiffs intend more formal contact with former employees—such as a trial subpoena. Accordingly, I will grant Plaintiffs' motion for the contact information. I will, however, caution Plaintiffs to use the contact information carefully to the extent they contemplate informal avenues of contact with former employees if in their professional judgment the Maryland Rules of Professional Conduct would allow such contact in any particular case. *See, e.g. Camden v. State of Md.*, 910 F. Supp. 1115, 1121 (D. Md. 1996) ("Indeed, no court—including those that have blessed *ex parte* contact with former employees—has declared that such contacts permit invasion of confidential areas."). I suggest (but do not require) that a safer route might well be to work through opposing counsel so as to avoid running afoul of those rules and facing potentially harsh sanctions.

3.      **Information and Documents Concerning Toys "R" Us' "Ready To Ride" Program**

Finally, Plaintiffs seek information and documents related to Toys R Us' "Ready to Ride" program. Defendants contend that the documents Plaintiffs seek from prior to the sale of the bicycle in this case have been destroyed, and that they should not be required to produce documents from after the date of the sale because those documents are not relevant to the warranty issues in this case. Plaintiffs counter that regardless of whether documents dated after the sale are admissible to establish the existence of any warranties in this case, they are nevertheless relevant because they may lead to the discovery of other admissible evidence.

I first note that both parties raise arguments related to the former provision for discovery of relevant but inadmissible information, which provided for discovery of relevant information "reasonably calculated to lead to the discovery of admissible evidence." As of December 1, 2015, that phrase was removed from Rule 26 and has been replaced by the statement that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). The Advisory Committee's notes concerning the change explain that the "reasonably calculated" language was removed precisely because it was often employed "incorrectly, to define the scope of discovery." Fed. R. Civ. P. 26(b) Advisory Committee's notes to the 2015 amendments. The Advisory Committee's notes emphasize that relevance is, and always has been, the cornerstone of the scope of discovery. *See id.*

Turning to the relevance of the requested information and documents concerning the "Ready to Ride" program, I note that Defendants bear the burden of proving that the materials are not relevant under Rule 26. *Desrosiers*, 675 F. Supp. 2d at 601. Defendants' sole argument pertains to the date that the documents were created. However, absent a claim that the "Ready to Ride" documents dated after the date of sale in this case are different from the documents that pre-dated the sale, I cannot conclude that their date alone renders them irrelevant. For example,

if the pertinent language was copied from the edition used at the time of the sale, the production date itself might not bar admission. Plaintiffs contend that the documents and information are relevant for the purpose of cross-examining witnesses at trial as well as to help them locate the pre-sale "Ready to Ride" materials from other sources. None of Defendants' arguments undermine Plaintiffs' intended uses for the information and documents, and Defendants have not articulated any burden that producing them would pose. Accordingly, I find that the "Ready to Ride" program information and documents dated after the sale are within the scope of discovery, Defendants are ordered to produce the requested information and documents. However, because Plaintiffs have not otherwise limited the timeframe of their request, Defendants need only produce the requested information and documents for the earliest two-year period for which they possess them.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Compel (ECF No. 42) is GRANTED IN PART and DENIED IN PART. Defendants are ordered to produce:

1. Information and Documents concerning complaints received by Defendants related to the rear brake assembly of the same or similar model bicycles with pull brake systems for the three year period preceding the date of the bicycle sale in this case;

2. The contact information of certain former Toys R Us employees; and

3. Information and Documents concerning Toys R Us' "Ready to Ride" program for the earliest two-year period for which Defendants possess responsive information and documents.

Dated May 6, 2016                                       /s/
                                                J. Mark Coulson
                                                United States Magistrate Judge