IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CALLAHAN, et al., | * | |
| Plaintiffs | * | |
| v. | * | Civil Case No. 15-02815-JMC |
| Toys "R" US-DELAWARE, Inc., | * | |
| Defendants. | * | |

* * * * * * *

## MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS *IN LIMINE*

Plaintiffs, Virginia Callahan and T.G., brought this action against Defendants, Toys "R" US-Delaware, Inc. ("Toys 'R' US") and Pacific Cycle, Inc. ("Pacific"), alleging various counts of strict liability, negligence, and breach of warranty, stemming from an accident involving T.G. and a bicycle that was manufactured, assembled, and sold by Defendants. Plaintiffs' defect theory is based on a manufacturing defect in the minor Plaintiff's bicycle's rear brake, causing it to malfunction. Plaintiffs assert that the defect may have either been present at the time of original manufacture by Pacific Cycle or at the time of final assembly by Toys 'R' US, or both. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 70, 72.) Now pending before the Court is Defendants' combined Motion *in Limine*. (ECF No. 81.) The motion has been fully briefed (ECF Nos. 81, 90, 92), and oral argument on the motion was held on January 17, prior to selecting a jury. For the reasons that follow, and those stated on the record, Defendant's Motion *in Limine* is GRANTED in part, denied in part, and deferred in part.

"A ruling on a motion *in limine* is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court." Adams v. NVR Homes, Inc., 141 F.

Supp. 2d 554, 558 (D. Md. 2001) (internal citations omitted). "The primary purpose of an *in limine* ruling is to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues." Id

Defendants' motion seeks to exclude evidence that falls into several categories, some of which are conceded by Plaintiffs and are now moot.[1] Those remaining categories of evidence are discussed in the order in which the parties have organized them in their briefs.

<u>*Non-similar accidents, issues, or lawsuits*</u>

Defendants ask this Court to prohibit Plaintiffs from offering evidence of other accidents involving products made and sold by Defendants. Specifically, Defendants seek to exclude seven complaints/reports of brake failures on Defendants' bicycles that Plaintiffs obtained during discovery. While Plaintiffs believe that such evidence is relevant to "Defendants' failure to properly assemble bicycles," Defendants contend that these cases and reports are too dissimilar to be probative of that issue, and are as a result unfairly prejudicial.

"Where a party seeks to introduce evidence of other accidents, [he or she] 'must present a factual foundation for the court to determine that the other accidents were *substantially similar* to the accident at issue.'" <u>Mirchandani v. Home Depot U.S.A., Inc.</u>, 470 F. Supp. 2d 579, 583 (D. Md. 2007) (citing <u>Buckman v. Bombardier Corp.</u>, 893 F.Supp. 547, 552 (E.D.N.C.1995)) (emphasis added). "Where a party offers evidence of prior accidents solely to prove notice, however, 'the incidents need only be sufficiently similar to make the defendant aware of the

---

[1] Defendants seek the exclusion of: evidence relating to Defendants' assets and attorneys, evidence of past discovery disputes, and evidence of recalls of other products made or sold by Defendants. Plaintiffs, however, have noted that they will not introduce evidence as to any of these. Additionally, Plaintiffs indicated at oral argument that they did not seek admission of 202 Federal cases filed against Pacific Cycle.

dangerous situation.'" Mirchandani, 470 F. Supp. 2d at 583 (citing Benedi v. McNeil–P.P.C., Inc., 66 F.3d 1378, 1386 (4th Cir.1995)) (internal brackets omitted).

As it relates to the seven specific reports or incidents that were disclosed during discovery, Plaintiffs have not met their burden of showing how these reports are *substantially similar* to the alleged incident at issue in this case. In admitting evidence of prior accidents, it is not enough that those accidents had a similar (albeit unverified) complaint of defect. Rather the proponent of admitting the evidence must show how these similar defects were the cause of their respective accidents to the exclusion of other possible factors and causes, such as rider error, misuse, or improper alterations. Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995) ("An offer of evidence of other incidents, to support a claim that the present accident was caused by a defect that also caused the other incidents, requires that the plaintiff establish the following factors: (1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents"). These seven reports involve different models of bicycle than the one involved in the present case, and each describes a different brake malfunction than the one alleged here. Moreover, these reports provide no discussion as to the cause of the accidents in those cases, nor do these seven reports implicate Toys "R" US as the assembler or distributor.

Even if, as Plaintiffs request, this evidence would be admitted for purposes of showing notice—and are thus viewed under the more liberal standard of *sufficient similarity*—Plaintiffs have still not done enough to show how these prior instances were relevant. As noted above, none of these seven instances allege the same braking malfunction or even that the braking

system was the proximate cause of the accidents in those cases. As a result, these seven incidents/reports are inadmissible.

Finally, these complaints are unverified and, according to Defendants at oral argument, are logged simply for customer service/satisfaction purposes. Such unchallenged and uninvestigated allegations of defect are not sufficient reliable for admission, particularly when balanced against the potential to mislead and confuse the jury, and unfairly prejudice Defendants.

### References to Chinese manufacturing and cost/pricing

Next, Defendants state that Plaintiffs should be precluded from making any comments or implications that the bicycle was of an inferior quality because it was manufactured in China. "Such commentary on Chinese manufacturing and inferior quality," Defendants warn, "is irrelevant to the issue of whether the product was defective" and it potentially raises issues of ethnic bias. Defendants qualify their request, though, adding that they themselves should be permitted to "offer evidence that the bicycle in question was sold at a reasonable price," and that the price of the bike in question resulted in a certain design and simpler braking system than seen on other, presumably higher priced, models. Plaintiffs, in turn, respond that they will not argue that the product was of inferior quality because it was manufactured to China or that sourcing products in China damages the American economy. But, Plaintiffs note, Defendants should also be precluded from commenting about the relatively low price of the bicycle in question.

To the extent that either party wishes to introduce evidence that bicycle was of inferior quality by virtue of its foreign production, such evidence will not be permitted. However, if the location of manufacture is relevant to Defendant Pacific Cycle's ability to comply with the standard of care applicable to bicycle manufacturers, it will be permitted.  For example, if

Plaintiffs have evidence that companies manufacturing remotely have certain duties required by the standard of care, such evidence will not be precluded  Additionally, evidence regarding the price of the bicycle relevant to its design and manufacturing is permitted if such evidence is probative of the issue of the complexity of the braking system and the accompanying assembly instructions. But arguments that a plaintiff buying a product at a particular price point is entitled to a lesser standard of care or invites a higher likelihood of a manufacturing or assembly issue are not supported by the law and therefore will not be permitted.

*Limiting the scope of expert opinion of Kristopher Macalinao*

Defendants seek to limit the testimony of Plaintiffs' expert witness, Kristopher Macalinao. Defendants contend that Mr. Macalinao, a bicycle mechanic and store owner, should not be permitted to testify about the cause of the accident in this case, given that he has no experience or expertise in the field of accident reconstruction. In their response, Plaintiffs appear to concede that Mr. Macalinao will not testify as to what specifically caused the accident in this case. Rather, Mr. Macalinao, who has inspected the bicycle at issue, intends to testify as to the alleged defect of the braking mechanism in the bicycle, and how such a defect *could* lead to an accident like the one experienced by T.G.

The Court will allow Mr. Macalinao to testify on matters related to his expertise, including, as outlined by Plaintiffs, the alleged defect in the braking mechanism of the bicycle and whether such a defect could lead to an accident. However, Defendants' concerns are noted, and Mr. Macalinao may not testify that any defect in the braking mechanism was, in fact, the cause of the accident in this case, as he did not see the accident occur nor does he have the requisite expertise in accident reconstruction to render an expert opinion on that issue from the other available evidence.  The Court notes, however, that it does not view this as fatal to

Plaintiffs' case if Plaintiffs can put forth other evidence which, when taken in combination with Mr. Macalinao's opinion, establishes that the alleged defect likely caused the accident in this case.

<u>References to Ready to Ride Program</u>

The next issue concerns evidence of or reference to the "Ready to Ride Program," which is a program through which customers of Toys "R" US can purchase pre-assembled bikes from the store. It appears that Plaintiffs intend to offer evidence of this program in support of their express warranty theory. However, it was established through discovery that where a customer purchases an unassembled bike and has that bicycle assembled by store employees—as Plaintiffs did in this case—such a customer would have not utilized the "Ready to Ride" program. As a result, Defendants believe, as does this Court, that any mention of this program would be irrelevant and could mislead the jury into thinking that an express warranty accompanied the purchase of this bicycle by virtue of a program that Plaintiffs never utilized. Accordingly, Plaintiffs are not permitted to introduce evidence relating to this program.

There is another "ready to ride" warranty issue, unrelated to the "Ready to Ride" program referred to above. In their response to the motion *in limine*, Plaintiffs cite a portion of the Toys "R" US "standard operating procedures" for assembling bicycles, which states, in relevant part, that "[a] designated team member must ensure that all assembled bikes are *ready to ride*."[2]  This statement, Plaintiffs contend, is relevant to whether or not there was an express warranty from Toys "R" US, such that the bicycle was ready for use once Plaintiffs left the store with it.  At this juncture, Plaintiffs are not precluded from introducing evidence containing this phrase, as long as

---

[2] Plaintiffs do not provide a citation of where this instruction can be found in the "standard operating procedures."

it does not relate to the "Ready to Ride" program discussed above.  As to whether such a phrase establishes a warranty, the Court need not decide that issue yet.

### *Additional testing on the bicycle*

Plaintiffs' expert, Mr. Macalinao, apparently with the assistance of Plaintiffs' counsel, performed the Consumer Product Safety Commission's (CPSC) ten pound test—which had been described by Defendants' expert described during his deposition—on the bicycle in question. Defendants take issue with any expert opinion that Mr. Macalinao may offer regarding that replication of CPSC testing because such testing was not timely disclosed to Defense counsel, in violation of Federal Rule of Civil Procedure 26. The Court agrees.

Following the deposition of Defendants' expert, Plaintiffs provided an amended interrogatory response in which they indicated that "Plaintiffs" performed the CPSC ten-pound test, as described by the defense expert. Defense counsel followed up by asking for a supplemental disclosure if, in fact, Mr. Macalinao had performed such testing.  In response, Plaintiffs indicated that they were unaware of any additional reports from Mr. Macalinao and that they themselves had done the testing.  Not only does such a failure to disclose violate Federal Rule of Civil Procedure 26 (a)(2)(A-B), (e),[3] but it prevented Defendants a meaningful opportunity to conduct discovery regarding such testing, and as a result, they were denied the chance to determine whether Plaintiffs' expert was trained in performing the CPSC test, whether

---

[3] <u>Ace Am. Ins. Co. v. McDonald's Corp.</u>, No. CIV.A. GLR-11-3150, 2012 WL 2523883, at *2 (D. Md. June 28, 2012) ("Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose the identity of any witness they may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness who is retained or specially employed to provide expert testimony in the case"); see also <u>EEOC v. Freeman</u>, 961 F. Supp. 2d 783, 797 (D. Md. 2013), <u>aff'd in part sub nom. E.E.O.C. v. Freeman</u>, 778 F.3d 463 (4th Cir. 2015) ("Rule 26(e) requires that an expert report be supplemented when a party learns that in some material respect the disclosure or response is incomplete or incorrect") (internal citations omitted).

he had conducted that test previously, whether the scale that they used during the testing was calibrated, whether the set-up of the test was appropriate, or whether any notes, results or other documentation was prepared in concert with that testing.

Furthermore, based on the pleadings and oral argument, it appears that Defense counsel was told that there were no additional reports from Mr. Macalinao and that he would not be offering additional opinions.  As such the Court, pursuant to Federal Rule of Civil Procure 37, will not allow Plaintiff's expert to offer any opinions about the CPSC testing. S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595 (4th Cir. 2003) ("Rule 37(c)(1) provides that a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed") (internal citations omitted).

### In-court testing of the brake

Defendants also ask this Court to exclude in-court testing of the bicycle by counsel, experts, parties and members of the jury.

As an initial matter, the Court has some doubt as to whether there will be sufficient evidence to conclude that the bicycle today—five years after the accident and after assembly and reassembly of the brake in question—is in the same condition as it was on the date of the accident.   Additionally, it cannot be disputed that the minor Plaintiff herself is not in the same condition as she was four years ago at age 11, riding the bicycle for the first time (other than a quick spin around her driveway a year before) on a trail and on an incline.  If that cannot be established, then such in-court testing to prove the function of the brake today does not meet the basic evidentiary hurdle of relevancy under Federal. Rule of Evidence 401.   Barnes v. Gen.

<u>Motors Corp.</u>, 547 F.2d 275, 277 (5th Cir. 1977) ("In order for an experiment of this type to be admissible in evidence, it is not required that all the conditions shall be precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed") (citing <u>Illinois Central Gulf Railroad Company v. Ishee</u>, Miss., 317 So.2d 923, 926 (Miss.1975)). It also has the potential to be overvalued and therefore mislead the jury.

This accident occurred over four years ago, when T.G. was 11 years old. Since that time, the bicycle has apparently been stored in Plaintiffs' garage, with no indication as to whether it has been ridden or regularly maintained. Accordingly, any in-court testing may run into the problem of whether the bicycle and braking mechanism were in sufficiently similar condition and that the Plaintiff herself is sufficiently similar to how she was at age 11. It remains to be seen whether such a foundation can be established. Even if these can be established, however, the Court has other concerns outlined below.

As it relates to any testing conducted by Plaintiffs' counsel and Mr. Macalinao that was performed but not disclosed, for the reasons noted above, this testing will not be allowed in court as the Court has already disallowed testimony about such testing done prior to the trial.

With regards to inviting members of the jury to squeeze the brake lever of the bicycle and determine for themselves whether or not the force required to do so equated to ten pounds or less, the Court finds that such testing would be outside the layperson's experience and would potentially be confusing and misleading, and therefore unfairly prejudicial to the jury in violation of Federal Rule of Evidence 403. Simply because many, if not all, members of the jury may have had some experiences with riding a bicycle at some point in their lives, it does not mean that they are qualified to perform a test about the force required to squeeze a brake lever and be able to

competently compare that force to a government regulation or industry standard. Jurors' past bicycle-related experiences and grip strength will likely vary, and counsel will not have the opportunity to question these jurors on pertinent matters related to that experience.  Moreover, members of the jury may be inclined to value their own evaluation of the brake lever over the opinion of the testifying expert who has conducted the test many times before. <u>Barnes</u>, 547 F.2d at 277 ("The problem presented by the use of experiments is the danger of misleading the members of the jury who may attach exaggerated significance to the test").  Accordingly, the Court will not allow juror testing of the bicycle.

With regard to Plaintiffs themselves doing in-court testing, Ms. Callahan never tested the brake lever prior to the accident, and T.G., the only witness who had tested the lever, has since indicated that she cannot remember what pulling the lever felt like. T.G. DEPOSITION, 52, ECF. No. 92-1.  Obviously, neither is a qualified expert and it would be impermissible to allow either to testify that the state of the rear brake demonstrates a product defect.  But even a lay opinion offered under Federal Rule of Evidence 701 as to the pressure required to depress the brake today compares to how it was four years ago (assuming substantial similarity can otherwise be established) has the requirement that such testimony be rationally based on a witness's own perception and the Court is not convinced that any witness's memory separated by a period of four years, without more, would provide a sufficient foundation for such testimony or be helpful to the jury.

### <u>Statements by Plaintiffs' treating physician</u>

Lastly, Defendants anticipate that Plaintiffs will offer statements, made by T.G.'s treating physicians and dentists to Ms. Callahan, about any pain and sensations that T.G. was

experiencing. Such statements, Defendants contend, should be prohibited as inadmissible hearsay.

"Federal Rule of Evidence 803 enumerates twenty-three distinct hearsay exceptions, under which statements are admitted regardless of whether the declarant is available as a witness." Doali-Miller v. SuperValu, Inc., 855 F. Supp. 2d 510, 513 (D. Md. 2012). Therefore, even though Plaintiff is available, and indeed likely, to testify at trial, any statements she made about her pain "will be admissible if they fall within one of the exceptions provided in Rule 803." Id.

Pursuant to "Rule 803(4), a statement that is made for—and is reasonably pertinent to— medical diagnosis or treatment and that describes medical history; past or present symptoms or sensations; their inception; or their general cause is not excluded by the rule against hearsay." Id. (internal citations omitted). This exception to the hearsay rule is "premised on the notion that a declarant seeking treatment has a selfish motive to be truthful because the effectiveness of medical treatment depends upon the accuracy of the information provided." Id. (internal citations omitted). "A statement's admissibility under Rule 803(4) is evaluated under a two-part test: (1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." Id. at 514 (internal citations omitted).

In light of these principles, and without any additional context as to the statements that will be attempted to be elicited at trial, the Court cannot categorically say whether or not such statements will run afoul of the hearsay rule or whether they will be admissible as an exception under Rule 803(4). Statements that T.G. made about her symptoms and pain could very well be admissible, as they would presumably fit within the "present symptoms or sensations" portion of

Rule 803(4). Nonetheless, the Court cautions that the admissibility of such statements will likely hinge on when they were made, under what circumstances, and to whom were such statements told. Additionally, the Court notes that testimony from someone other than a treating physician, dentist, or T.G. herself, about a statement made by T.G. regarding her symptoms and/or pain, will be evaluated as potentially being hearsay within hearsay. Jacobsen v. Towers Perrin Forster & Crosby, Inc., No. RDB–05–2983, 2008 WL 782477, at *7 (D.Md. Mar. 20, 2008) ("Hearsay within hearsay ... refers to a hearsay statement that includes within it a further hearsay statement. Such statements are subject to the same evidentiary rules as one-level hearsay statements.").

For the reasons set forth herein, Defendant's Motion *in Limine* (ECF No. 81) is GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART.

*The issue of alleged product misuse*

Though not raised by either of the parties directly, the Court wants to give the parties guidance on the issue of alleged product misuse, to include an alleged failure to follow instructions.

In Maryland, misuse of the product, including a failure to use the product in the manner instructed, has several potential uses in a products liability case.  Most commonly, this defense arises in the context of an alleged design defect.  Ellsworth v. Sherne Lingerie, Inc., 495 A.2d 348 (Md. 1985) (failure to use fabric meeting certain flammability standards in design of nightgown); Simpson v. Standard Container Co., 527 A.2d 1337 (Md. App. 1987) (failure of design to include childproof cap); Lightolier, A Div. of Genlyte Thomas Grp., LLC v. Hoon, 876 A.2d 100 (Md. 2005) (failure to incorporate appropriate thermal cut-off in design of lighting fixture).  In such cases, a finding that the product was used in a manner that was not reasonably foreseeable or that it was used on contravention of written instructions or warnings can negate a

finding of defect.  The theory in such cases is that the product design is not defective if the product had been used in a reasonable foreseeable way or in accordance with clear instructions. See Ellsworth, supra, at 355.

Misuse or failure to follow instructions may also be relevant on the issue of causation. For example, in the context of an alleged manufacturing defect (such as the instant case), a plaintiff's case fails if, notwithstanding the existence of a defect, the alleged injury was not caused by that defect but instead by a misuse of the product or a failure to follow instructions or warnings.  Id. at 355-356.  As the Maryland Court of Appeals noted by way of example in Ellsworth:

> For example, a high speed electric drill may be defective because a manufacturing defect causes it to short circuit and produce a shock during normal usage.  A plaintiff who attaches a brush to that drill and in attempting to clean his teeth suffers injury to his mouth from the high speed of the brush will lose because his misuse is the sole cause of his misfortune, and the defect in the drill is not in any way related to the harm.

Id.

Misuse or failure to follow instructions may also be relevant in products liability cases that include a negligence count when such misuse or failure to follow amounts to contributory negligence.[4]

In the present case, based on the proposed instructions submitted, the Court assumes misuse/failure to follow is a defense theory.  That theory has several potential applications, but the Court has concerns about potential limitations in a misuse defense as applied to a manufacturing defect case.  For example, the Court understands that the defense may want to

---

[4] In an appropriate case, misuse and failure to follow might also be relevant to the issue of assumption of risk, an affirmative defense in both negligence and strict liability cases.  See Ellsworth, supra, at 356.

contend that Plaintiffs' failure to follow the instruction—"Ensure front brakes and rear brakes are working properly"—constitutes a misuse of the product and therefore negates a finding that the brake is defective notwithstanding that the product allegedly contained such a defect.  The Court has questions as to whether this would be an appropriate application of "misuse" because a bike containing a manufacturing defect in the brake would not otherwise be made nondefective by following this general instruction.  Stated another way, the product would not necessarily be safe for use if the instruction was followed because it would still contain a manufacturing defect. See Simpson, supra (citing Section 402A of the Restatement (Second) of Torts).

Assuming that the instruction itself it not so general as to render it ineffective on its face,[5] although following the instruction may in some cases lead to a discovery of the manufacturing defect so as to potential avoid injury, and may, in some circumstances, be relevant on the issues of causation and contributory negligence, such an instruction does not render the product non-defective if followed and so would seem to fall outside the reasoning of Ellsworth, Lightolier, and Simpson on the issue of the existence of a defect.  By contrast, the Defense may also contend that the bike was too big for T.G. in contravention of the sizing instructions provided in the owner's manual and it was this mis-sizing (rather than any issue with the brake) that caused the injuries in the case, or that T.G. failed to otherwise adequately familiarize herself with the operation of the bicycle including how to operate the brakes.  These applications of misuse to negate the element of causation would be potentially appropriate in this case if supported by sufficient evidence.  Again, this also might be relevant on the issue of contributory negligence.

---

[5] See Lightolier, supra, at 111 where the Court of Appeals explained that warnings on products that are vague or otherwise difficult to understand shall not generally have the effect of barring a product liability claim when those warnings are unheeded (citing Klein v. Sears, Roebuck and Co., 608 A.2d 1276, 1282-83 (Md. App. 1992)).

To be clear, the Court will still entertain argument on the misuse instruction later in the case and, of course, trial developments might have an impact on the Court's preliminary conclusions above.   But the Court does have the concerns expressed above that may impact whether the instruction if given and, if given, how it is worded.

Dated: January 19, 2017                                      _____/s/_____
                                                                                J. Mark Coulson
                                                                                United States Magistrate Judge