# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MARYLAND
## BALTIMORE DIVISION

VIRGINIA CALLAHAN, *et al.*

      Plaintiffs

              v.                            Civil Action: JKB-15-02815

TOYS "R" US – DELAWARE INC., *et al*.

      Defendants

-o0o-

## PLAINTIFFS' RULE 59 MOTION FOR NEW TRIAL

Plaintiffs, Virginia Callahan and T.G., by their attorneys, Francis J. Collins, Jacqueline S. Togno and Kahn, Smith & Collins, P.A., hereby move, pursuant to Rule 59 of the Federal Rules of Civil Procedure, for a new trial.

## INTRODUCTION

The trial court made several reversible errors which require the granting of a new trial. First, the Court erred when, on the third day of a four-day trial, it allowed Defendants to vary their theories and evidence from what they put in the Pretrial Order and turn this case from a personal injury case into an inquest into evidence tampering.   Second, the Court erred when it granted a spoliation instruction and allowed Defendants to argue that Plaintiffs and their counsel had tampered with the evidence.   Third, the Court erred by granting a motion in limine that prohibited the jury from inspecting and touching the bike and from taking the bike – Plaintiffs' exhibit number 1 – into the jury room.   A bike brake is within the ken of the normal juror and its functioning is not solely within the understanding of experts.   Fourth, the Court erred in failing to revisit its ruling on the limited admissibility of the bike and the ten-pound test when Defendants opened the door

by presenting their own evidence on the topic.  Fifth, the Court erred by not revisiting its earlier evidentiary rulings once Defendants injected into the case the issue of spoliation.

If a new trial is not granted the parties will undergo an appeal which will merely delay the case and result in a new trial after an appeal.  Thus, justice and judicial expediency require the trial court to grant a new trial.

## PROCEDURAL HISTORY

Plaintiffs filed the instant personal injury action in the Circuit Court for Howard County. The case was removed to this Court. (ECF. 1).  The matter was tried before a jury of eight members from January 17-20, 2017.  A special verdict was rendered by the jury finding no defect in the subject bike and judgment was entered in favor of Defendants (ECF. 114, 117).  Now before this Court is Plaintiffs' Motion for New Trial.  Fed. R. Civ. P. 59.

## STANDARD OF REVIEW

Rule 59(a) provides that a new trial may be granted "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1).  The authority to grant a new trial under Rule 59(a) "is a matter resting in the sound discretion of the trial judge." *Ray v. Allergan, Inc.*, 863 F. Supp. 2d 552, 556 (E.D. Va. 2012) (citing *Wadsworth v. Clindon*, 846 F.2d 265, 266 (4th Cir.1988) (internal citations omitted).  The crucial inquiry is "whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." 863 F. Supp. 2d at 556 (quoting *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir.1994) (internal citations omitted).  Although Rule 59(a) does not list specific grounds for a new trial, the Supreme Court has held that the trial court has sound discretion to grant a new trial if the trial was, "not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S.

243, 251 (1940); *see, e.g., Vaughn v. Nissan Motor Corp. in U.S.A.*, 77 F.3d 736, 737 (4th Cir. 1996) (finding reversible error where "a jury instruction on a key issue was erroneous, and [the Court] cannot say that the error was harmless"; the Fourth Circuit vacated the judgment and remanded for a new trial.); *Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989) ("If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice, the trial judge must set aside the evidence and grant a new trial.") (internal citations omitted). "It is well established that, errors in the admission or rejection of evidence may be grounds for a new trial." *DePaoli v. Vacation Sales Assocs., L.L.C.*, 2006 WL 1117799, at *10 (E.D. Va. Apr. 25, 2006), aff'd as modified, 489 F.3d 615 (4th Cir. 2007). Rule 61 of the Federal Rules of Civil Procedure provides that error is grounds for granting a new trial if "refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61 (2006); *Ingram Coal Co. V. Mower, L.P.*, 892 F.2d 363, 366 (4th Cir.1989) (finding that a court at every stage of the proceeding must account for any error or defect in the proceeding which affects the "substantial rights" of the parties). Thus, errors that cause substantial harm to the moving party justify a new trial and errors that are prejudicial necessitate a new trial. 892 F.2d at 366.

## STATEMENT OF FACTS

Plaintiff T.G., a minor, was injured because the back brake of her bike was defective when it was sold. Virginia Callahan, T.G.'s grandmother and legal guardian, purchased the subject bike from Toys "R" Us (TRU) on September 24, 2011. About one year later, on the second occasion that T.G. rode the bike, the back brake malfunctioned. On September 16, 2012, T.G. attempted to slow her bike while going down a hill and could not squeeze the rear brake lever. She then pulled the front brake and flipped forward, falling and crushing her mouth on the handlebars. Among other injuries, she lost three adult teeth. The day after the accident, her grandmother examined the

bike and learned that the rear brake was not properly working – as was stated by T.G., it was very difficult to squeeze the back brake.  Both T.G. and Ms. Callahan testified at trial that the back brake was very difficult to squeeze at the time of the accident.

Before suit was filed, Plaintiffs produced the subject bike for inspection by a professional bike mechanic, Kristopher Macalinao.  His inspection was videotaped in its entirety on March 13, 2014 (Plaintiffs' Exhibit No. 25).  Mr. Macalinao reached the conclusion that the rear brake was defective because of "excessive cable drag." (*Id*.)  Mr. Macalinao testified at trial that the back brake was still in the same condition as when he first inspected the bike.  Mr. Macalinao also testified that the back brake had not been tampered with because if it had been, changes to the brake would be apparent upon inspection.

After Mr. Macalinao confirmed that the bike was defective, Plaintiffs filed suit.  Prior to trial, the parties engaged in extensive discovery.  As part of discovery, Plaintiffs voluntarily allowed Defendants to examine the subject bike on two separate occasions.  David Mitchell examined and photographed the bike on April 8, 2015.  Patrick Logan examined and photographed the bike on November 23, 2015.  David Mitchell did not issue a report.  Patrick Logan later issued a report on December 28, 2015.  In his report, Patrick Logan contended that at the time of his inspection, the rear brake was not defective – he claimed that he did a "two finger test" and that the back brake passed the test (*See* Defendants' Exhibit No. 2, 2 video inspections).

On December 9, 2015, and again on December 18, 2015, Plaintiffs provided the video link of Mr. Macalinao's inspection to Defendants and sent Defendants a copy of the video.  Plaintiffs designated the video as Mr. Macalinao's expert report.  Defendants did not object to this procedure.  Mr. Macalinao was deposed on February 17, 2016.  At that time, he testified about the defective nature of the rear brake:

> Q:      So in this case when you put the bicycle up on the stand [for the March 13,

2014 inspection] and you checked the brakes what did you notice?

A:    The first thing I did notice was that the right lever had a lot of friction in it. That's when I proceeded to talk to [Plaintiffs' counsel] about what I found wrong with the bike …. With this bike, for instance, I didn't think the rear brake held with reasonable force. The bike had so much friction in it that I don't feel a child of whatever age who would ride this size of a bike could operate the rear brake, which is one of the things I brought up to [Plaintiffs' counsel].

Deposition of Kristopher Macalinao, Tr. 18: 20-19: 1; 20: 8- 13.  Mr. Macalinao testified that he was careful in his inspection and made it a point not to alter the bike in any way.  Depo. Tr. 24: 3-12.  Mr. Macalinao inspected the bike a second time on February 17, 2016, shortly before his deposition.  He testified that the bike was in the same condition at the time of his second inspection. Tr.: 25: 23-26:1-11.  Defendants fully explored all aspects of his inspection, the condition of the bicycle, and the video report he provided:

Q:    In your report, as far as I can tell, you have a couple of opinions, and we'll just go through them. Your first opinion is that the rear brake casing is too long and had too much bend, causing excessive drag; is that correct?

A:    Correct.

Q:    The second opinion is that the brake pads were angled incorrectly?

A:    Correct.

Q:    The third opinion is that the brake noodle's angle was over 90 degrees, correct?

A:    Correct …. I want to believe I mentioned that the cable wasn't lubed, and I'm trying to remember if there's anything else that wasn't mentioned by you. I believe that's all …. if someone rides a lot, it will go through a lot of wear and tear. If they ride minimally, a bike a year or two years down the line could be as if it still came out of the floor. Those checks are used to see how much wear and tear that the bike has had in a year …. I think in this case that [T.G.] tried to pull the rear brake, couldn't pull it hard enough to stop in time because it wasn't functioning properly, and then pulled the front brake. I don't know what happened afterwards, but I know from a mechanic standpoint that front brake was actually working properly, whereas the rear brake was not functioning properly, and I can see somebody – in my opinion, I can see somebody using the properly functioning brake more than the improperly functioning brake in a situation where they need to stop.

Q:    Explain to me why that's your opinion in this case (referring to the opinion that the brake cable housing was too long, and had too much bend causing excessive cable drag).

A:    Not just her bike, but it's actually a typical problem that you find in tri-bikes or aero bikes, bikes with weird bends, per se, not your common cable

routing. The housing, whether it be shift or brake will have a hard angle, and it will – for a brake, since we're talking about brakes, as you squeeze the lever, the cable, obviously, is going to pull, which adds tension, and if that housing bend is too tight or sometimes even too short, the cable is actually going to press harder on that housing which will cause a lot more friction than it needs to.

Q:   That problem (referring to excessive cable bend affecting the brake lever's spring back) wasn't present in this case, right?

A:   That problem was present in this case. It was – part of the video that I did was to show that we found excessive drag. It wasn't only the portion where – I believe I pulled on it and felt that it was too much force, but also released the lever, and I had to flick the lever manually with my fingers forward to show that it did not – that there was enough drag that the lever wouldn't go forward. In this case, the spring in the bike is actually located in the rear brake, and then I showed that the rear brake spring is properly functioning by basically unhooking the noodle from the V-brake where it sits in the cradle, and then squeezing the two independent V-brake arms with the spring in it, and showing that the spring did function properly, and then also showing that when there was no tension on the line that the brake lever itself had no problem actuating from being fully depressed to being extended out.

Tr. 32: 16-33: 8; 57: 18-23; 76: 22- 75: 82: 6- 19; 84: 22-85: 17. (Mr. Macalinao testified consistently with these opinions at trial but the transcript is not presently available).

After Mr. Macalinao's deposition, Plaintiffs deposed Defendants' expert, Patrick Logan, on March 18, 2016. During his deposition, Mr. Logan stated that he had not done the ten-pound test called for in 16 CFR Part 1512.5(b)(5). Plaintiffs' counsel asked Mr. Logan how that test should be conducted. Mr. Logan explained that the test could be done with a simple fish scale and explained how to do it. *See* Deposition of Patrick Logan, Tr.: 23: 1-24: 4. A couple weeks after the deposition, Plaintiffs' attorneys and Mr. Macalinao inspected the bike again at Mr. Macalinao's bike shop. They conducted the ten-pound test described by Mr. Logan thirty times. The bike failed 29 out of 30 times. On most occasions, the rear brake required at least twelve pounds of force to squeeze the rear brake and cause the brake pads to contact the braking surface of the rear wheel. In contrast, the front brake required less than two pounds of force. Plaintiffs immediately amended their answers to interrogatories informing Defendants:

> Plaintiff [sic] performed the ten-pound pull test precisely as described by Patrick Logan in his deposition and the rear brake failed. The rear brake required in excess of 10 lbs. of pressure to cause the brake pads to contact the rear wheel. The front brake required less than 2 lbs. of pressure.

Plaintiffs' Second Amended Answers to Defendant Pacific Cycle Inc.'s First Set of Interrogatories, Ans. No. 6.   On March 29, 2016, Plaintiffs served the amended answers on Defendants. Defendants asked if an additional expert report would be forthcoming and Plaintiffs accurately stated that no report had been prepared.  Defendants did not seek to further depose Mr. Macalinao or to obtain further information about the testing.

Prior to trial, on or about December 7, 2016, more than a month before trial, Plaintiffs again revealed Mr. Macalinao's ten-pound testing in the pre-trial order:

> In addition to providing this expert testimony, Plaintiffs will be relying on industry standards promulgated by the Consumer Products Safety Commission.  The Code of Federal Regulations contains a specific minimum standard for hand brakes.  16 CFR Part 1512(c)(5).  Brake levers must make the brake pads touch the side of the wheel with less than 10 pounds per foot of pressure (a.k.a. 44.5 Newtons).  Plaintiffs asked the Defendants' expert about how to perform a test to make sure the rear brake met this standard.  He explained how he would perform the test.  After his deposition Plaintiffs purchased the equipment mentioned and, with the assistance of Plaintiffs' bike mechanic, were able to demonstrate that the rear brake failed this standard.
>
> From a layman's point of view, the rear brake is very difficult to apply and clearly needs serious adjustment.  The bike is now in the possession of Plaintiffs' counsel and will be brought as an exhibit for the jury to examine.  Although the front brake functions quite well, the rear brake is clearly malfunctioning.  The bike was not altered since the accident and was made available for inspection by Defendants' experts on two occasions.  Defendants' expert disagrees with Plaintiffs' expert but Plaintiffs believe that, when presented with the actual bike and brake, no reasonable jury would accept the opinion of Defendants' expert.

(ECF. 80).

On or about December 12, 2016, Plaintiffs sent Defendants Plaintiffs' exhibit list, including Plaintiffs' test results conducted pursuant to the instructions of Mr. Logan and 16 CFR Part 1512(c)(5) ("ten-pound test"), (Pl. Ex. No. 8).  Defendants did not identify any problem with this

exhibit until December 19, 2016 when they filed a motion in limine (ECF. 81).  Defendants did

not seek further discovery or to re-open Mr. Macalinao's deposition.  Defendants did not seek any

further information about the testing before filing the motion in limine or after the motion in limine.

At trial Defendants claimed surprise about the ten-pound testing despite being aware of the fact

that Plaintiffs informed them initially of this testing on March 29, 2016 and in the first draft (and

all later drafts) of the pretrial order on December 7, 2016.  Defendants were given further

information about the testing on December 12, 2016 when the parties exchanged exhibits.

Plaintiffs argued that any alleged nondisclosure was substantially justified or harmless because the

Defendants were not surprised and allowing it would not disrupt the trial.  Despite Defendants'

lack of diligence, the Court found that Plaintiffs should have been more explicit about the ten-

pound testing and excluded the evidence regarding this testing.   Throughout the trial Plaintiffs

repeatedly contended that Defendants opened the door to the excluded test results but the Court

remained steadfast in excluding them.

Shortly before trial, Plaintiffs' counsel met with Mr. Macalinao to prepare his testimony.

They brought the bike to his shop once again and he confirmed that the rear brake was still in the

same condition it had been in the first time he inspected it on February 17, 2014, and as it had been

mid-March, 2016 when the ten-pound testing had been done.   At no time before trial had

Defendants contended that the bike's condition had been changed in any material way.   On the

contrary, Defendants' answers to interrogatories state:

> Interrogatory No. 8.    State whether The Product underwent any change in its rear
> brake assembly system between the time it left your control and the time of the
> occurrence and, if so, describe each change in condition. (Standard Product
> Liability Interrogatory No. 2.); and, if there was a change after the date of assembly
> of The Product in the assembling process of the component(s) at issue, specifically
> the rear brake system [or component substantially similar to the component(s) at
> issue, e.g. the rear brake system]: state the nature of the change; state the reason for
> the change; state the date of the change; identify each person who directed the
> change; and identify each document that implements the change.

> Response:      TRU objects to this interrogatory to the extent it seeks information
> protected by the attorney-client privilege or work product doctrines. Subject to and
> without waiving objection, TRU is <u>unaware of any change in the rear brake</u>
> <u>assembly system.</u>

Defendant Toys "R" Us' Answers to Plaintiffs' First Set of Interrogatories, Ans. No. 8. (emphasis

added).   Since the lawsuit was filed and up until the middle of trial, Defendants always

affirmatively maintained that the back brake was functioning based on Mr. Logan's two finger

test.  Their answers to interrogatories state:

> Interrogatory No. 16.  With regard to the rear brake system and its mechanisms in
> this case, *state precisely all reasons the brakes failed*, all parts and/or components
> involved in that fall, and the nature of any concerns you had about the cause of the
> fall based on what you learned from the events of this case.
>
> Response:  Pacific Cycle objects to the extent it seeks information protected by the
> attorney-client or work product doctrines.  Subject to and without waiving this
> objection, Pacific Cycle *refers Plaintiffs to the opinions detailed in the report of its*
> *expert, previously produced in discovery.*
>
> Interrogatory No. 17.  If *you contend that the excessive cable drag* of The Product's
> rear brake system was caused by anything other than excessive bend in the brake
> cable and brake noodle, state all facts which support your contention.
>
> Response:  Pacific Cycle objects to the extent it seeks information protected by the
> attorney-client or work product doctrines.  Subject to and without waiving this
> objections, Pacific Cycle states that it does not contend there was excessive cable
> drag.  Pacific Cycle refers Plaintiffs to the *opinions detailed in the report of its*
> *expert,* previously produced in discovery.

Defendant Pacific Cycle, Inc.'s Answers to Plaintiffs' First Set of Interrogatories, Ans. No. 16, 17.

Defendant Toys "R" Us' provided the same answers (emphasis added).  Defendant Toys

"R" Us' Supplemental Answers to Plaintiffs' First Set of Interrogatories, Ans. No. 19.

> Prior to trial the parties drafted the Joint Pretrial Order.  In that document Defendants state:
>
> Despite Plaintiffs' claims to the contrary, the back brake functioned properly.
> Defendants' expert was able to engage the back brake and stop the wheel by pulling
> the brake lever with two fingers.  This test, known as the "two finger test," is a
> standard test for appropriate brake function in the industry.  Plaintiffs' expert claims
> that brake noodle and brake pads were angled incorrectly would not have impacted

> the function of the brake.
> …
> The back brake on the bicycle in question passed the CPSC requirements for brakes. The CPSC standard requires that the hand lever engage the brake when no more than ten-pound of force is applied to the lever. If the brake lever engages the brake during the "two finger test," it requires less than ten-pound of force. The back brake of the subject bicycle passed the "two finger test" and therefore complies with the CPSC requirement.

(ECF. 80). In essence, the Court allowed Mr. Logan to testify that the bike passed the ten-pound test but excluded Plaintiffs evidence to the contrary. Additionally, Mr. Logan's testimony from his deposition made no mention of the contention that the rear brake was difficult to squeeze. On the contrary, Mr. Logan contended that the back brake was within normal limits:

> Q:   Okay. I don't recall seeing you do any of the testing that is required under the Code of Federal Regulations. Was I – am I correct?
> A:   I would say that when I did the two-finger brake depression I was checking to ensure that there wasn't sufficient force. The CFR requires that a brake lever requires less than 10 pounds of force, 1 inch in from the lever. And so my being able to depress the lever, you know, with two fingers in the process told me that it met that CFR. So I didn't have an issue with the performance of the brake lever.
> …
> I – my findings, when I tested it, were two fingers – you know, the lever moved fine.

Dep. of Patrick Logan, Tr.: 15: 2-13; 28: 10-12.

Prior to trial, Defendants filed a motion in limine requesting that the jury be barred from touching the back brake lever. Defendants also moved to prevent Mr. Macalinao from conducting any testing of the brake in front of the jury. Defendants argued that allowing the jury to touch the brake or seeing the brake testing would be "unfairly prejudicial." (ECF. 81). The Court granted the motion.

During the second day of trial Defendants noticed that the front handlebars were not in precisely the same alignment they had been in when the bike was inspected on two prior occasions. They brought this to the attention of the Court on the third day of trial. No evidence was elicited

regarding how the handlebars had been re-aligned.  Plaintiffs' counsel explained that the bike had been transported on several occasions in motor vehicles and that likely caused the change. However, there was no evidence in the record regarding any intentional conduct or any change to the brakes.  Defendants' expert contended that the alignment of the handlebars was relevant to how the accident happened but conceded that it had nothing to do with the functioning of the back brake.

Prior to trial, Defendants never contended that the back brake had been tampered with. Rather, they contended that a human being would be unable to say with any certainty that the back brake felt the same or different now as it did earlier.  This was precisely the rationale that the Court used to exclude testimony by Virginia Callahan and T.G. regarding the current condition of the brake.  Nonetheless, this was *precisely* the evidence that Defendants used at trial when they called their expert witness.  They requested the opportunity for Mr. Logan to squeeze the back brake in the courtroom and then asked him if the brake felt the same as when he felt the brake at the time of his earlier inspection.  Mr. Logan testified that the brake was much harder to squeeze now than it had been at the time of the earlier inspection.  He used no objective testing to support his testimony and the Court did not allow Plaintiffs to use the ten-pound test conducted by Mr. Macalinao to demonstrate that he was wrong or to call into doubt his credibility.  Even after Mr. Logan's in-court inspection, the jury still was not permitted to touch the brake, Mr. Macalinao was not allowed to test the brakes, and the Plaintiffs were prohibited from testifying that the brake was the same now as when the accident happened.  To the extent touching the brake would have allowed the jurors to weigh the credibility of the expert witnesses, the Court still did not allow it.

Well after the trial had begun, Defendants started on a new theory that was not previously disclosed in discovery or mentioned in the pretrial order.  They contended that the back brake was in a changed condition.  They requested permission to allow Mr. Logan to re-examine the bike by

squeezing the back brake.  The Court allowed Mr. Logan to do so and shortly thereafter, allowed Mr. Logan to change his opinions 180 degrees.  That is, in the middle of trial, Mr. Logan testified that the back brake was now defective and had changed.  He contended that it was now "super sticky."  This is tantamount to an admission that the brake is now in a defective condition.  This contention was not to be found in any report by Mr. Logan, discovery responses, or the pretrial order.  The Defendants completely changed their theory and argued that the bike had been tampered with and, in order to cure this alleged change in the evidence, requested that a spoliation instruction be submitted to the jury.  Inasmuch as the jury was barred from touching the bike or the brake, the testimony and contention that tampering had occurred after Mr. Logan's inspection was wholly irrelevant and severely prejudicial and probative of nothing.  Assuming for the sake of argument that Plaintiffs or their lawyer did actually tamper with the back brake after Mr. Logan's deposition, an allegation that is wholly untrue, since the jury did not actually get to feel the brake, such evidence was wholly irrelevant.

The Court agreed to give the jury a spoliation instruction which allowed the jury to draw an adverse inference against Plaintiffs.  This became the center-piece of Defendants' position – Plaintiffs or Plaintiffs' counsel had tampered with the evidence and the bike, now clearly defective, was in a changed condition.  Defendants did not limit their argument to the contention that the bike handlebars had been changed as referenced in the spoliation instruction.  They contended that Plaintiffs had tampered with the back brake – by conflating the handlebar alteration with the back brake.  Yet, Mr. Logan (and Mr. Werwie) testified on cross examination that the change in the orientation of the handlebars and its relative position to the front wheel had no effect whatsoever on the functionality of the brake.  According to the trial notes of Plaintiffs' counsel, Mr. Logan testified something to the effect:

Q:      Would the handlebars being 30 degrees out of line have affected the brakes?

A:      No.

The Court did not require Mr. Logan to conduct objective testing, such as using a force meter or the fish scale available in the courtroom.  Rather, the Court allowed Mr. Logan to testify that the back brake was now in a changed condition based precisely on the evidence that the Court had just a few days before excluded – the testimony of an individual who felt the back brake.  By excluding the objective testing, Defendants were able to accuse Plaintiffs of spoliation of evidence without any evidence to substantiate that very serious claim.

During closing argument, Defendants were relentless in making the accusation that Plaintiffs had tampered with the evidence even though this issue had only been raised less than one day beforehand.  This accusation was also leveled against Plaintiffs when objective testing was readily available to dispute it but had been excluded.  In particular, the testing done after Mr. Logan's deposition would have revealed that, shortly after Mr. Logan's inspection, the bike failed the ten-pound test and that the brakes were in precisely the same condition at the time of trial.  If permitted, the fish scale could have revealed that the back brake remains in precisely the same condition as when Mr. Logan conducted his "two-finger test" at the time of his inspection.  However, the Court excluded any objective testing evidence.  The Plaintiffs were not allowed to present the ten-pound test from after Mr. Logan's deposition or to re-conduct the testing of the bike in its current condition.  This testing was relevant to both the issue of whether the brake was defective and the issue of the credibility of the expert witnesses.

The Court initially decided to provide the spoliation instruction related to the orientation of the handlebars in relation to the front wheel.  This issue related solely to how the accident happened and had no significance with regard to the functioning of the rear brake.  Mr. Logan opined that the orientation of the handlebars indicated that the accident was not a pitch-over accident but a spill-over or side accident.  Both Mr. Logan and Mr. Werwie, Pacific Cycle's

corporate representative, conceded that the orientation of the handlebars did not affect the functioning of the rear brake.  Despite this fact, Defendants argued that Plaintiffs tampered with the rear brake since Mr. Logan's deposition, rendering the rear brake very difficult to squeeze and described it as "super sticky."  Defendants did not limit their spoliation argument to the happening of the accident and conflated it with "tampering" with the rear brake, thus accusing Plaintiffs and their counsel of serious wrong-doing.

The jury ultimately sided with Defendants holding in their special verdict form that Plaintiffs failed to demonstrate that the brake was in a defective condition when it left Toys "R" Us. (ECF. 114).  This decision was based wholly upon Defendants' argument that Plaintiffs had tampered with the evidence.  This is readily apparent because, by the end of trial, Defendants had conceded that the brake was "super sticky."  The only question was when it became "super sticky."  The jury was left to speculate, based on the spoliation instruction and unfounded arguments, that Plaintiffs had tampered with the back brake.  The fact is that there was utterly no evidence to support the contention that the back brake had been altered or tampered with.  Although the handlebars were not in precisely the same orientation as when inspected by Mr. Mitchell and Mr. Logan, months before, that had nothing to do with the back brake.  In short, the undisputed evidence is that the back brake was defective on the bike produced at trial.  There is no evidence in the record from which the Court or the jury could find that Plaintiffs tampered with that brake.  The back brake still does not pass the ten-pound test to precisely the same degree as shortly after Mr. Logan's deposition.  Nonetheless, the Court provided a spoliation instruction and Defendants used that instruction to argue that Plaintiffs had tampered with the back brake.  This was not a minor issue for the jury or Defense Counsel – it was Defendants' only argument to the jury.  Defendants were wrongly permitted to deviate completely from the evidence and theories set forth by them in the Pretrial Order.  The Court allowed them to present expert opinions that were 180

14

degrees different from those contained in their expert's report and the Pretrial Order they submitted.  Defendants' case was not revealed in their discovery responses or pretrial order and the case became about whether Plaintiffs engaged in nefarious conduct – not whether a young girl was injured because of a defective bike.

It is clear that the Court never accepted the contention that there was any evidence that Plaintiffs or their counsel tampered with the evidence.  After the evidence and closing argument, the Court complimented the attorneys for both sides on a well-conducted trial.  If the Court thought there was evidence of tampering, the Court would not have complimented Plaintiffs' counsel on a job well done.

## LAW AND ANALYSIS

**I.     THE COURT ERRED BY ALLOWING DEFENDANTS TO CHANGE THE THEORY OF THEIR CASE AND TO RAISE NEW DEFENSES ON THE THIRD DAY OF TRIAL WHICH RESULTED IN MANIFEST INJUSTICE TO PLAINTIFFS.**

Federal Rule of Civil Procedure 16(e) and Maryland's Local Federal Rule 106 contain comprehensive requirements that provide for the orderly presentation of a trial in Federal Court.  "Pretrial orders [of the type specified in Rule 16(d)] are designed to expedite litigation and eliminate surprise by framing the issues remaining for trial." *Perfection–Cobey Co., Div. of Harsco Corp. v. City Tank Corp.,* 597 F.3d 419, 420 (4th Cir.1979); *Cunningham v. LeGrand,* CIV.A. 2:11-0142, 2012 WL 3028015, at *2 (S.D.W. Va. July 24, 2012).   A pretrial order of this type may only be modified "to prevent manifest injustice."  FRCP 16(e).

The Pretrial Order in the instant case contemplated the presentation of a personal injury trial involving an allegedly defective bike.  Defendants identified their defenses in the Pretrial Order.  The most important defense raised was that the bike was, at that time of sale and for several years thereafter, not defective.  They contended that their expert inspected the bike in 2016 and

found it to be free of defects.  In particular, the relevant part of Defendants' submission limited

Defendants defenses as follows:

> Virginia Callahan, the Grandmother and guardian of Tori, decided to purchase a "girls bicycle" for Tori to replace the bicycle she had out-grown. On September 24, 2011, Ms. Callahan purchased a Schwinn Traverse bicycle, distributed by Pacific Cycle, Inc., for Tori at Toys "R" Us on September 24, 2011.  This bicycle is a women's bicycle, not a girl's bicycle.

…

> Both Tori and Ms. Callahan admit that they never used or tested the brakes prior to the accident.  Tori was therefore unfamiliar with the bicycle and the brakes.  On September 16, 2012, Tori was riding the bicycle near her home when she fell and hit her mouth on the handlebar.  As a result, Tori lost two teeth and fractured another.

> Despite Plaintiffs' claims to the contrary, the back brake functioned properly.  Defendants' expert was able to engage the back brake and stop the wheel by pulling the brake lever with two fingers.  This test, known as the "two finger test," is a standard test for appropriate brake function in the industry.  Plaintiffs' expert claims that brake noodle and brake pads were angled incorrectly would not have impacted the function of the brake.

> The subject bicycle was designed and manufactured to comply with the Consumer Protection and Safety Commission's ("CPSC") regulations that apply to adult bicycles as codified in 16 CFR part 1512.  The back brake assembly is manufactured and assembled by Pacific Cycle's manufacturer and comes to the retailer or consumer pre-assembled.  Pacific Cycle takes several steps to ensure its bicycles comply with the CPSC standards.  It conducts third-party testing, including tests specific to the brakes, to ensure that the bicycle complies with the CPSC standards.  The subject model bicycle passed these tests.  Pacific Cycle provides Certificates of Compliance to Toy "R" Us that certify its bicycles comply with CPSC regulations along with the manual that instructs Toys "R" Us to check to ensure the brakes are functioning properly.  Finally, Toys "R" Us checks the brakes after assembly by engaging the brake handles to ensure they are functioning properly before selling a bicycle to its customers.

> The back brake on the bicycle in question passed the CPSC requirements for brakes.  The CPSC standard requires that the hand lever engage the brake when no more than ten-pound of force is applied to the lever.  If the brake level engages the brake during the "two finger test," it requires less than ten-pound of force.  The back brake of the subject bicycle passed the "two finger test" and therefore complies with the CPSC requirement.

…

> Not only did the brake on the subject bicycle function properly, Plaintiffs' own actions caused Tori's accident and injuries.  First, Mrs. Callahan

16

purchased, and allowed Tori to ride, a bicycle that she was too small for. …Plaintiffs did not follow these warnings.

…

It is clear that, for the first three days of trial, Defendants contended that the bike was not defective even when it was inspected by Mr. Logan.

On the beginning of the third day of this four-day trial, Defendants completely changed their tactic and all but admitted that the rear brake is defective. They described the back brake as "super sticky." In order to account for this change in tactic, Defendants had to blame someone for the allegedly changed condition. They accused Plaintiffs and their counsel of tampering with the evidence.

The timing of Defendants' change-in-tactics provided Plaintiffs no opportunity to disprove Defendants' unfounded accusations. The purpose of FRCP 16(d) and (e) and Local Rule 106 was wholly undermined. There is testing available and expert testimony that could be brought to bear on this issue. Yet, the Court allowed Defendants to abandon the position staked out in the Pretrial Order and assert an entirely new defense. As a result of Defendants' failure to follow the Pretrial Order, Plaintiffs were deprived of a fair trial.

The Final Pretrial Order serves the purpose of, "insur[ing] the economical and efficient trial of every case on its merits without chance or surprise." *Hull v. Chevron U.S.A., Inc.,* 812 F.2d 584, 588 (10th Cir.1987). "The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur." *Davey v. Lockheed Martin Corp.,* 301 F.3d 1204, 1208 (10th Cir. 2002); *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1222 (10th Cir. 2000). *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P. O.E. No. 1450,* 827 F.2d 1324, 1329 (9th Cir.1987) ("Issues not preserved in the pretrial order are eliminated from the action."); *Larin Corp. v. AllTrade, Inc.,* EDCV 06-01394 ODW, 2011 WL 66180, at *8 (C.D. Cal. Jan. 5, 2011); *Porter v. Am. Family Ins. Co.,* 13-CV-03446-WYD-KMT, 2016 WL 97745, at

*1 (D. Colo. Jan. 7, 2016).

The standard for amending the pretrial order is even higher when trial has begun.  *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1120 (5th Cir. 1991) ("Once trial has begun, the provisions of F.R.C.P. 16(e), expressly incorporated by Rule 36(b), impose a more restrictive standard.").  Pursuant to F.R.C.P. 16(e), the filing of a pre-trial order governs the subsequent course of an action.  *Walker v. Anderson Electric Connectors,* 944 F.2d 841 (11th Cir.1991), cert. denied, 113 S.Ct. 1043 (1993); *Lutnick v. New York City Health & Hosps. Corp.,* 8 A.D.D. 236 (S.D.N.Y. Dec. 16, 1994).  A pretrial order may be amended to prevent manifest injustice and when there is no surprise or prejudice.  *Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 346 (5th Cir.2002); *White v. Great W. Cas. Co.,* CIV.A. 08-1491, 2009 WL 3254562, at *1 (W.D. La. Oct. 8, 2009).  Clearly, when Defendants turned the issue away from whether there was a defect in the bike to allegations that Plaintiffs or their attorneys tampered with the evidence, there was both surprise and prejudice.

**II.   THE COURT IMPROPERLY GAVE A SPOLIATION INSTRUCTION WHEN THERE WAS NO EVIDENCE TO SUPPORT IT AND WHEN THERE WAS NO EVIDENCE OF WRONGFUL INTENT.   GIVING THIS INSTRUCTION CONSTITUTED REVERSIBLE ERROR.**

The Court submitted the following instruction to the jury:

The condition of the front wheel of the bicycle and its position relative to the handlebar has changed between the time Defendants' expert inspected the bicycle and today.  The bicycle was in the possession of the plaintiffs during that time.

The position of the front wheel relative to the handlebar was evidence material to Defendants' expert opinion in this case.  Therefore, you may, but are not required to infer that the position of the front wheel relative to the handlebar was in a condition favorable to the Defendants, and unfavorable to the Plaintiffs before this change.

If you make this inference, you should consider it in light of all of the other evidence offered in the case as you reach your verdict.

18

Jury Instruction No. 14.  Defendants used this instruction to contend that Plaintiffs or their counsel had "tampered" with the back brake.

The 2015 Amendments to the Federal Rules of Civil Procedure require the court to provide sanctions that are proportional to any misconduct.  Under Rule 37(e)(1), related to electronically stored information, the court may take action no greater than necessary to cure the prejudice resulting from the loss of evidence.  Rule 37(e)(2) allows a spoliation only where the party acted with an intent to deprive the opposing party of the evidence.  *Shaffer v. Gaither,* 2016 WL 7331561, at *2 (W.D.N.C. Dec. 16, 2016); *U.S. v. Nelson,* 481 Fed. Appx. 40, 42 (3d Cir. 2012) ("where there is no showing that the evidence was destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper.").  *See also*, *Lexpath Techs. Holdings, Inc. v. Welch,* 2016 WL 4544344, at *2 (D.N.J. Aug. 30, 2016).

A judgment will be reversed for error in jury instructions, "if the error is determined to have been prejudicial, based on a review of the record as a whole." *Buckley v. Mukasey*, 538 F.3d 306 (4th Cir. 2008).  To make a finding of spoliation of the evidence, the "necessary element" of willful conduct must be present.  The Fourth Circuit held:

> [W]hen a proponent's intentional [but not necessarily bad faith] conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct. [The court may, inter alia,] permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence. *An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.*

*Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) (internal citations omitted) (emphasis added); *Renteria-Camacho v. DIRECTV, Inc.,* 2017 WL 193161, at *1 (D. Kan. Jan. 18, 2017) ("a party must submit evidence of intentional destruction or bad faith").  "It is well established that a

party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *BASF Corp. v. Man Diesel & Turbo N. Am., Inc.,* CV 13-42-JWD-RLB, 2016 WL 5817159, at *44 (M.D. La. Sept. 30, 2016).

Once a defendant manufacturer has had the opportunity to inspect, a change in the product does not justify a spoliation instruction. See *Pirrello v. Gateway Marina*, 2011 WL 4592689, at *7 (E.D.N.Y. Sept. 30, 2011) (in finding plaintiff's duty to preserve damaged boat had expired, court noted, among other things, that although defendant was on notice of plaintiff's claim one-and-one-half years prior to filing of plaintiff's complaint, defendant failed to request that boatyard holding boat preserve it for defendant's expert's inspection); *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 292 (S.D.N.Y.2011) (although chemical samples were spoliated two months after litigation commenced, defendant had ten months of pre-litigation notice, giving defendant adequate opportunity to inspect samples); *Gaffield v. Wal-Mart Stores E., LP*, 616 F. Supp. 2d 329, 338 (N.D.N.Y. 2009) ("Plaintiff had ample opportunity in the nearly two years between the accident and the filing of the complaint to inspect the bicycle," but failed to do so).

The spoliation instruction was requested by Defendants initially because the front wheel was not as far askew from the handlebars as it had been when the bike was produced for inspection. Defendants contended at trial that the position of the handlebars relative to the front wheel was relevant to whether T.G. suffered a pitch-over accident. The Court did not permit Mr. Logan to testify as an accident reconstructionist. Mr. Logan could not say how the accident happened and what caused the handlebars to become skewed. Obviously, handlebars can become askew during

an accident when the bike hits the ground after a fall.  Defendants suggested that T.G. had a side accident rather than a pitch-over accident.  Moreover, regardless of whether the accident was a true "pitch over," if the rear brake played any part of causing the accident, it should not matter. Defendants' argument that this was not a pitch over accident is immaterial to whether or not the back brake was defective.

The Court allowed Mr. Logan to testify regarding Defendants' theory about how the accident happened – essentially he testified as an accident reconstructionist when he had no background, training or experience in that field and had not revealed his opinions in his reports. Plaintiffs contend that admission of that evidence was erroneous.  However, the more significant fact is that, assuming there is validity to Defendants' contention regarding the handlebar issue, a spoliation instruction was neither necessary nor appropriate.  There was no evidence to support a finding of willful misconduct or that Plaintiffs intentionally altered the evidence in an effort to mislead the jury or the Defendants.  Indeed, the Court refrained from making such a finding or even conducting a hearing on the matter.  Plaintiffs produced the bike on two occasions with the handlebars askew.  Defendants were free to point out that the position of the handlebars was askew compared to their pictures.  Plaintiffs offered to re-align the handlebars to their earlier position. Plaintiffs offered to stipulate that the handlebars had been re-oriented after the two inspections. The Court erred by granting a spoliation instruction when there were less intrusive ways to rectify the situation, especially in light of the fact that there was no evidence of any intention to deceive. Since the bike had been produced twice with the skewed handlebars, no inference can be drawn that Plaintiffs intentionally tampered with the evidence.

The spoliation instruction was particularly inappropriate since Defendants never requested that the bike be maintained after the inspection.  Defendants did not send a subpoena or other judicial process to assure that the bike was kept in precisely the same condition it had been in at

the time of the inspection.  Defendants did not write to Plaintiffs' counsel informing them of the need to preserve the bike in any particular manner.  Defendants did not subpoena the bike to trial and had no legal basis to complain about the condition of the bike.  In *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 458 (2d Cir. 2007) the Defendant manufacturer did not make an affirmative request that the Plaintiffs preserve the defective product.  The Court held that the failure to make the request prevented the Court from granting a spoliation instruction.  *See also*, *Thiele v. Oddy's Auto and Marine, Inc.,* 906 F. Supp. 158, 162–63 (W.D.N.Y.1995) (denying a spoliation sanction requested by the primary defendant who had inspected the evidence before destroying it, while granting a spoliation sanction in favor of a third-party defendant who was not afforded a similar opportunity to inspect the evidence).  In *Baliotis v. McNeil,* 870 F. Supp. 1285, 1290 (M.D.Pa.1994) the Court noted that "[t]he scope of the duty to preserve evidence is not boundless, but requires that the defendant be provided an opportunity for inspection."  This is precisely what happened here – Defendants were given two opportunities to inspect the bike during discovery.  They photographed its condition and were given the opportunity to make their argument that the skewing of the handlebars had significance related to the happening of the accident.  Moreover, the fact that the handlebars changed slightly does not give rise to an inference of tampering.  If tampering had occurred, it would have occurred before the inspections.

The fact is that Plaintiffs did preserve the back brake in precisely the same condition it had been in at the time of the accident and at the time of Defendants' inspections.  Plaintiffs had no idea that a minor alteration of the handlebars after the inspections had occurred would be considered spoliation.  This alteration likely occurred when the bike was transported in the back of a motor vehicle but the record is devoid of any evidence of intentional tampering.

Defendants argued that during opening statements Plaintiffs' counsel represented that the bike was in the same condition as at the time of the accident.  Without a transcript, it is impossible

22

to know precisely the words used.   What is clear, however, is that no affirmative statement about the handlebars was ever made during opening.   Plaintiffs' counsel was focused solely on the brake system, not the handlebars.   It was not until the third day of trial that Defendants contended that the handlebars had been altered.   It is not clear how the orientation of the handlebars changed but what is clear is that it had no relation to the brakes and could easily have been rectified without taking the extraordinary step of a spoliation instruction and allowing Defendants to accuse Plaintiffs and their counsel of tampering with the evidence.   In this post- O.J. Simpson trial world, any suggestion of tampering with evidence is taken seriously by juries and the suggestion was clearly prejudicial to Plaintiffs' case.   The spoliation instruction was not proportional to the alleged conduct, given that "an adverse inference instruction is an extreme sanction and should not be imposed lightly," *Curcio v. Roosevelt Union Free Sch. Dist.,* 283 F.R.D. 102, 107 (E.D.N.Y. 2012).

The skewed position of the handlebars, by Defendants' own admission, was not relevant to the issue of whether or not the back brake was defective.   Yet, at the end of the trial and during closing argument, defense counsel accused Plaintiffs and counsel of tampering with evidence. Defendants presented no evidence whatsoever that the Plaintiffs or counsel engaged in intentional conduct that contributed to the bicycle's change in condition.   Even if Defendants alleged a negligent change in the evidence – which they did not and therefore waived – an adverse inference cannot be drawn merely from negligent loss or destruction of evidence.   The Defendants must have some evidence that the Plaintiffs and counsel knew that the evidence was relevant to some issue at trial and that Plaintiffs' and counsel's <u>willful conduct</u> resulted in its loss or destruction. Defendants did not allege as much and the record does not support that claim.

*During trial*, Mr. Logan squeezed the rear brake a few times and manually had to push the brake lever back to its resting position.   In other words, the rear brake lever did not spring back

automatically into position as it should have.  The inspection lasted less than thirty seconds and

was otherwise solely visual.  The inspections performed by Mr. Logan before and during trial were

non-destructive.  Likewise, the ten-pound test conducted by Mr. Macalinao was considered "non-

destructive" by Mr. Logan and he explained:

> Q.   If you had done a CPSC brake system test on this particular bike involved
> in this particular case.
> A.   Right.
> Q.   You would not expect to see anything destroyed, would you?  Unless it was
> a defective brake.
> A:   The tests that are there, I would not see it destroyed if we do the 10-pound
> test, which is – you measure the 10 pounds applied at the lever, no more
> than 10 pounds applied at the lever, which is the CPSC requirement, when
> you -- to pull the lever so that's it's to the point where the brake pads actually
> contact the rim.  So that force should be less than 10 pounds.  That is not a
> destructive force.  That test would be fine.  The other test, which is the
> braking distance test, could be performed without destroying the bicycle.
> Q.    So both of them could be performed without destroying the bicycle in any
> way, and in fact you would expect that the bike would not be destroyed in
> any way if you did that testing. Correct?
> A.   That's correct.

(Dep. Tr. 19: 9-25-20: 1).  Such a conclusion is also self-evident to anyone who has ridden a bike

for, indeed, if the brakes were destroyed by their use, they would certainly be considered defective.

Plaintiffs and their expert, and Defendants' experts, tested the brakes many times after the accident.

At no time before trial did Defendants even intimate that squeezing the rear brake repeatedly, as

one might do while riding or inspecting the brake, will alter the condition or functionality of the

brake.

The "chain of custody" of the subject brake is in the record.  Defendants' answer to

interrogatory no. 8 concedes that the back brake remained unchanged from the date of sale until

the date of the accident.  T.G. testified about how the brake felt at the time of the accident.  Virginia

Callahan testified how the brake felt the day after the accident.  Ms. Callahan testified that she

maintained possession of the bike until it was delivered to Mr. Macalinao for his inspection and

that she did not alter it in any way.  Mr. Macalinao testified that the brake was defective when he inspected it on the video.  Mr. Macalinao testified that the brake remained in precisely the same condition afterwards, from the time of his first inspection, through his second inspection and ten-pound testing, and up until the date of the trial.  Defendant presented no evidence that the brake was altered in any way since the accident.  Despite this undisputed testimony, Defendants contended that the brake had been tampered with because when Mr. Logan tested it during the trial it was clearly defective.  Neither Mr. Logan nor Defense Counsel were able to proffer an explanation for the change in the brake's functionality such as excessive use or intentional alteration.  Defendants entire theory was a bald assertion that Plaintiffs and their counsel had tampered with the evidence.

The spoliation alleged by Defendants, alteration of the orientation of the front wheel, was by their own admission, inconsequential to the jury's determination of whether or not the bicycle's rear brake was defective at the relevant time.  Mr. Logan testified on cross examination that the change in the orientation of the handlebars relative to the front wheel had no effect whatsoever on the brake.  Mr. Logan conceded as much at trial:

> Q:    Would [the handlebars being 30 degrees askew] have affected the brakes?
> A:    No.

At the time of his initial inspection, Mr. Logan found no defect in the rear brake.  At trial, however, Mr. Logan testified that the rear brake now felt "super sticky" and could offer no explanation for the defect.  To remedy the situation regarding the handlebars, Plaintiffs offered to stipulate that the handlebars of the bicycle were in a different condition in its current state than at the time of Mr. Logan's initial inspection.  The Court rejected Plaintiffs' proffer.  The Court found that the position of the front wheel relative to the handlebars at the time of Mr. Logan's initial inspection would have been favorable to Defendants to the extent it supported Defendants' contention that

25

the accident was a spill-over rather than a pitch-over.  The Court permitted the jury to draw an adverse inference against Plaintiffs for the bicycle's change in condition – conflating Defendants' alleged spoliation of the handlebars to the rear brake.

Accordingly, the adverse inference instruction was not warranted based on the evidence and resulted in unfair and undue prejudice to the Plaintiffs.

### III.   THE COURT ERRED BY PROHIBITING THE JURY FROM TOUCHING THE BIKE AND THE REAR BRAKE.  A BIKE BRAKE IS WITHIN THE KEN OF THE ORDINARY JUROR AND THE JURY IS CAPABLE OF FEELING THE BACK BRAKE AND FINDING THAT THE BRAKE WAS DEFECTIVE.

The Court correctly admitted the subject bike into evidence.  However, the Court erred when it refused to let the bike be inspected personally by the jury and refused to let the jury touch the back brake lever.  Jurors are not limited to using the sense of hearing and sight.  Jurors are also allowed to use their sense of touch when considering the evidence.

Relevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; a federal statute; the Federal Rules of Civil Procedure; or other rules prescribed by the Supreme Court.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402. "Under this rule all relevant evidence is admissible unless excluded by express provision of law or the rules themselves." *Stockton v. United States*, 214 Ct. Cl. 506, 513 (1977).  "These rules and practice favor admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977).  The Court admitted the subject bike into evidence since it was relevant under FRE 402.  Nonetheless, the Court prohibited the jury from touching the bike or the brake and prevented the bike from being examined by the jury in the jury room.  The jurors were permitted to view the bicycle only during the trial.  Thereafter, the jurors were barred from examining the bicycle during deliberations.  Once evidence is properly admitted into evidence, the jury is entitled to examine it.  For example, in *Haniffy v. Gerry*, No.

CIV. 08-CV-268-SM, 2010 WL 347037, at *1 (D.N.H. Jan. 26, 2010) a cell phone was admitted

into evidence.  The Court explained, "once the cell phone was admitted, the jury was entitled to

examine it without violating Haniffy''s constitutional rights." *Id*. at 7.   The Court further

explained:

> The jury was allowed to turn the cell phone on and examine its contents. In other
> words, just as the admission of a book necessarily entails admission of everything
> printed in it, admission of Haniffy's cell phone necessarily entailed admission of
> all the information entered into it.  Haniffy's cell phone was properly admitted into
> evidence. The jury was, therefore, entitled to examine it. Thus, neither the phone
> itself nor the material stored on it qualifies as extrinsic evidence.

*Id*. at 8.

Similarly, in *Bogle v. Galaza,* 38 F. App'x 437, 438 (9th Cir. 2002), the Court admitted a

lock into evidence.  The Court explained that the jury was entitled to "examine all pieces of

evidence carefully" and there was no error in allowing the jury to insert the key into the lock of a

safe. *Id*. at 38.  The Court did not view such an examination as an impermissible jury experiment

or the consideration of extrinsic evidence. *Id. See also U.S. v. Navarro–Garcia,* 926 F.2d 818, 821

(9th Cir.1991); *United States v. Rincon,* 28 F.3d 921, 926–27 (9th Cir.1994);  *United States v.*

*Holmes,* 30 F. App'x 302, 310 (4th Cir.2002) (rejecting as meritless criminal defendant's argument

that the jury developed facts not in evidence by using a magnifying glass during deliberations); cf.

*United States v. Placensia*, 352 F.3d 1157, 1165 (8th Cir.2003) (explaining that, "jurors may

examine any documents properly admitted into evidence"); *United States v. Beach*, 296 F.2d 153,

158–59 (4th Cir.1961) (explaining that, "the mere making of a more critical examination of an

exhibit than was made during the trial is not objectionable") (internal citation omitted).

The cases cited by Defendant in their motion in limine were inapposite.  Defendants relied

on three cases, *Barnes v. Gen. Motors Corp.,* 547 F.2d 275, 277 (5th Cir. 1977), *Chase v Gen.*

*Motors Corp.,* 856 F.2d 17, 20 (4th Cir. 1988) and *Tunnell v. Ford Motor Co.,* 330 F. Supp. 2d

27

731, 746 (W.D. Va. 2004).

First, citing *Barnes,* Defendants state: "Courts recognize that 'the problem presented by the use of experiments [at trial] is the danger of misleading the members of the jury who may attach exaggerated significance to the test.'" (ECF. 92).  However, the issue in *Barnes* was not performing an experiment during trial, but rather the admission of the results of an out-of-court experiment. *See Barnes,* 547 F.2d at 277.  In its reasoning, the *Barnes* Court focused on the "burden [] upon the party offering evidence of out-of-court experiments to lay a proper foundation demonstrating a similarity of circumstances and conditions" *Id*.  The question in the case at hand is not whether out-of-court experiments are substantially similar and admissible, but whether the jury should have been permitted to feel the back brake because it was physical evidence admitted into evidence and was relevant to the credibility of the expert witnesses.  *Barnes* is not applicable to this issue.

Defendants also improperly rely on *Chase* and *Tunnell*.  Again, similar to *Barnes*, the issue in those cases was the admission of out-of-court crash tests. *Chase,* 856 F.2d at 20; *Tunnell*, 330 F. Supp. 2d at 746.  In the case at hand, the bicycle was already admitted into evidence.  The issue here is whether the jury may touch the admitted evidence, not whether an out-of-court test may be admitted into evidence.

Accordingly, it was improper to prohibit the jurors from feeling the brake.

**IV.  THE COURT ERRED BY PROHIBITING THE JURY FROM FEELING THE BACK BRAKE AND HEARING EVIDENCE OF THE TEN-POUND TEST BECAUSE IT WAS RELEVANT TO THE CREDIBILITY OF THE EXPERT WITNESSES.**

The Court erred in refusing to let the jury inspect and touch the bike because the testimony of Mr. Logan and Mr. Macalinao regarding the condition of the back brake placed their credibility into question.  Up until the last day of trial, Defendants always affirmatively maintained that the

back brake was functioning based on Mr. Logan's two finger test.  Mr. Logan's testimony from his deposition made no mention of the contention that the rear brake was difficult to squeeze, and on the contrary, Mr. Logan contended that the back brake was within normal limits.  Mr. Logan testified in the middle of trial however that the brake was much harder to squeeze now than it had been when he inspected the bike.  He used no objective testing whatsoever to support his testimony. Yet, the Court still excluded Plaintiffs' ten-pound test conducted by Mr. Macalinao to demonstrate that Mr. Logan was wrong all along.  The Court also prohibited the jury from feeling the brake to call into doubt Mr. Logan's credibility.   Even after Mr. Logan's in-court inspection, the jury still was not permitted to touch the brake.  To the extent touching the brake would have allowed the jurors to weigh the credibility of the expert witnesses, the Court did not allow it.  Permitting the jury to examine physical evidence is relevant to the extent the jury can weigh the credibility of the expert witnesses.

The jury should have been allowed to feel the back brake in order to judge which of these witnesses was telling the truth.  Federal Rule of Evidence 104(e) states, "[Rule 104] does not limit a party's right to introduce before the jury evidence that is relevant to the weight or credibility of other evidence."   Indeed, "[i]t is the jury's function to weigh the credibility of witnesses and to resolve conflicts in the evidence." *United States v. Chikvashvili*, No. JKB-14-0423, 2016 WL 1585263, at 1 (D. Md. Apr. 19, 2016) (citing *United States v. Dinkins*, 691 F.3d 358, 387 (4th Cir. 2012)). *See also Glass v. Anne Arundel Cty*., 38 F. Supp. 3d 705, 719 (D. Md. 2014) ("It is the province of the jury, not the Court, to weigh the credibility of witnesses and resolve conflicts in evidence."); *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir.1996) ("[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.") (internal quotations omitted); *Williams v. G4S Secure Sols. (USA), Inc*., No. CIV.A. ELH-10-3476, 2012 WL 1698282, at *15 (D. Md. May 11, 2012) ("[W]e must ... not invade the province of the jury

29

and weigh the credibility of witnesses and evidence on contested issues of fact") (citing *Wesley v. Arlington Cnty.*, 354 F. App'x 775, 782 n. 9 (4th Cir.2009)).

Whether the bicycle was defective was a contested issue of fact for the jury to decide. As explained *supra*, on the last day of testimony, after Plaintiffs witnesses had all testified, Defendants conceded that the back brake was defective. The question then became, at what point did the brake become defective? Mr. Macalinao consistently testified that the rear brake was defective all along. Mr. Logan testified that the back brake was defective in its current condition, but that he did not know when or how the back brake's condition "changed." Defendants offered no evidence to support their change in condition theory. The credibility of the expert witnesses was certainly at issue. It was within the province of the jury to decide which expert to believe, and their ability to do so was usurped by the Court when it prohibited the jury from feeling the back brake and from putting that touch sensation in the context of the ten-pound test evidence. The jury could well have found Mr. Logan lacking in credibility.

Accordingly, the jury was unable to properly weigh the credibility of the expert witnesses.

**V.      THE COURT ERRED BY EXCLUDING THE TEN-POUND TEST EVIDENCE, ESPECIALLY AFTER DEFENDANTS OPENED THE DOOR BY HAVING MR. LOGAN FEEL THE BRAKE DURING THE TRIAL AND THEN PRESENTING TESTIMONY ABOUT WHAT HE FELT.**

The Court erred by granting Defendants' Motion in Limine (ECF. No. 81), which excluded evidence of the Consumer Product Safety Commission (CPSC) testing ("the ten-pound test") by Plaintiffs and their bike expert, Kristopher Macalinao. Plaintiffs sought to introduce evidence that the bicycle failed the ten-pound test to prove that the rear brake of the bicycle was defective at the time it left Toys "R" Us up until the time of the accident. Plaintiffs also offered the evidence to shed light on the credibility of Mr. Logan. The ten-pound test would have impeached Mr. Logan's credibility. The Court's exclusion of this evidence was in error and warrants a new trial.

30

Improper exclusion of evidence warrants a new trial if it results in "a high probability that the error ... affect[ed] the judgment." *Husky v. Ethicon et al.* 2017 WL 374736, at *5 (4th Cir. Jan. 26, 2017). The erroneous exclusion of evidence provides grounds for a new trial if it affected the substantial rights of the parties. *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 375 (4th Cir. 2015). To assess whether the exclusion of the evidence affected the substantial rights of a party, or whether the exclusion was harmless, courts focus upon "whether the error itself had substantial influence." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (internal citations omitted).

The Consumer Product Safety Commission requires that all bikes sold in the United States comply with 15 C.F.R. 1512.5. At the time bicycles are offered for sale to consumers, all bicycles' handbrakes must be tested at least ten times by applying "[a] force of less than 44.5 N (10 lbf) [10 pounds of force] [which] shall cause the brakes pads to contact the braking surface." The bicycle failed the test on 29 out of 30 separate occasions, proving its defective condition.

During trial, Mr. Werwie, Pacific Cycle's corporate representative, testified that the brake was not defective and that he could base that opinion on a visual inspection of the cable routing. He testified that the cable routing would not have resulted in the brake failing the ten-pound test.

During his deposition, Mr. Logan testified that he was familiar with the ten-pound test, had performed the test many times, and had the tool(s) to perform the test but chose not to perform it during his inspection of the bicycle. At trial, Mr. Logan testified that he did not know why he chose not to perform the non-destructive ten-pound test. Dep. of Patrick Logan, Tr. 15:2-19; 19:9-17; 23:9-11, 21-24:5.

Shortly after Mr. Logan's deposition, Mr. Macalinao conducted the test with the assistance and participation of Plaintiffs' counsel. Per Mr. Logan's instructions, Plaintiffs purchased a fish scale and had their expert conduct the test. Federal Rule 26(e) requires a party to supplement

31

responses to interrogatories and requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  Here, Plaintiffs timely disclosed the CPSC testing eleven months before trial.  Plaintiffs timely supplemented their discovery responses revealing the fact that they had conducted the 10-pound test according to Mr. Logan's specifications and that the bicycle had failed the test:

> Plaintiff performed the ten-pound pull test precisely as described by Patrick Logan in his deposition and the rear brake failed. The rear brake required in excess of 10 lbs. of pressure to cause the brake pads to contact the rear wheel. The front brake required less than 2 lbs. of pressure.

Plaintiffs' Second Amended Answers to Defendant Pacific Cycle Inc.'s First Set of Interrogatories, Ans. No. 6.

When drafting the pretrial order, the issue arose again, about a month before trial.  At that time, Plaintiffs provided the test results that the bike failed 29 out of 30 times.  Defendants did not seek more information – they filed a motion in limine.  Although the test information was contained in the pretrial order and Defendants were aware of it well before trial, the Court granted the motion in limine.

Despite Defendants being fully informed of the details of the 10-pound test in the Pretrial Order, the Court initially excluded this evidence on procedural grounds – the Court found that Plaintiffs had not adequately disclosed Mr. Macalinao's testing because they indicated in their answers to interrogatories that "Plaintiff" had tested the brake.  The Court also found that the Plaintiffs should have disclosed the test by creating a supplemental report and that the amended discovery was not enough.

Even if the means by which the Plaintiffs disclosed the CPSC testing constituted procedural

error, the failure was harmless to Defendants.  There was no surprise here.  Contrary to Defendants' contention that Plaintiffs withheld or concealed evidence, Plaintiffs immediately notified Defendants of the results, a mere two weeks after Mr. Logan's deposition.  The ten-pound test results were significant to the issue of whether the bike was defective and to the credibility of Defendants' expert, Mr. Logan and Pacific Cycle's representative, Mr. Werwie.  Prior to trial, Defendants and their expert contended that the brake was not defective.  However, by the time trial was over, Defendants had conceded that the back brake was "super sticky."  Thus, the issue was when the brake became defective – was it defective when it was sold by Toys "R" Us, or did it become defective at some other time?

Even if the Defendants could show that they were prejudiced by the way in which they were notified of the testing, Defendants opened the door to this evidence later in trial.  First, Defendants asked Mr. Werwie about the cable routing and whether that could cause excessive cable drag.  Mr. Werwie testified that he visually inspected the photos of the bike and could tell that the bike passed the ten-pound test.

Second, at Defendants' request, the Court permitted the Defendants to conduct supplemental inspections of the bicycle in the midst of trial (one in the presence of the jury and one out of the presence of the jury).  The jury heard testimony from Mr. Logan about those inspections.  When Mr. Logan testified about these inspections and admitted that the brake was "super sticky," Defendants opened the door to the issue of when the brakes had become defective.  Mr. Macalinao testified that the brakes were the same from the date he first inspected them until the day of trial.  The ten-pound test results would have corroborated that testimony and would have called into doubt the credibility of Mr. Logan.  Moreover, the fish scale sitting on Plaintiffs' counsel's table would have revealed that the brake examined by Mr. Logan during trial tested the same as shortly after his initial inspection – it failed to the same objectively measurable degree.

33

The ten-pound test also would have called into doubt the testimony by Mr. Werwie that the cable routing did not causes excessive cable drag.

The importance of the ten-pound test to Plaintiffs' case is self-evident.  All along, Plaintiffs' position was that excessive cable drag rendered the rear brake defective.  In other words, excessive cable drag caused the rear brake lever to feel "super sticky."  The degree of stickiness is the same today as when Mr. Logan first examined the brake.  By excluding the 10-pound test, the Court deprived the jury of important evidence that was relevant to both the defect in the brake and the credibility of Mr. Logan and Mr. Werwie.

Accordingly, the ten-pound was admissible and should have come into evidence.

## CONCLUSION

The Federal Rules of Procedure in general and the discovery rules in particular are designed to allow the parties to discover all relevant evidence and to present their case in an efficient and orderly way.  The process of preparing a pretrial order and articulating the theories of the case and the evidence that will be presented is intended to have the same impact.  The Court allowed Defendants to change the nature of the case during trial without any evidence to support their theory.  The case became about whether Plaintiffs and their lawyers were scoundrels who tamper with evidence rather than about the issues identified during the discovery and pretrial phase of the litigation.

There is absolutely no evidence in the record from which the Court could conclude that Plaintiffs or their counsel intentionally tampered with the evidence.  At most, an inference can be drawn that during transportation, the handlebars were realigned closer to their proper position. However, since that change took place after two defense inspections, the Court cannot conclude that there is any evidence to support a spoliation instruction.  Moreover, there was no intentional conduct.

There is no doubt that the jury found for Defendants because of the spoliation instruction – it was front and center in Defendants' closing argument.   Indeed, little else was mentioned. Defendants accused Plaintiffs and Plaintiffs' counsel of "tampering" with the evidence – not only the handlebars but also the rear brake.   Such accusations were first introduced into the case at a time when Plaintiffs had no ability to defend themselves – on the third day of the four-day trial. Their case had largely been presented and their expert witness had already testified.

The case devolved from the orderly presentation of a personal injury case for a young child into confused maelstrom.   Defendants were permitted to make arguments and present evidence that had never been revealed before trial and which were not even raised until almost all of the evidence had been presented.   By holding onto this theory of spoliation until after the Plaintiffs' final witness testified, Defendants were able to divert the jury's attention away from the facts of the case and toward unfounded speculation.   As a result, T.G. and her grandmother were deprived of a fair trial.   If necessary, they will appeal to the Fourth Circuit.   However, the most expedient solution is to grant them a new trial.

A new trial would allow a fair presentation of the evidence.   Plaintiffs could present testimony of the ten-pound test.   Defendants could re-inspect the bike and conduct their own tests. Defendants could inspect the bike to determine whether any true tampering occurred – evidence they will not find since it did not happen.   The Court will be allowed time to conduct a proper hearing on the issue of spoliation and tampering and to make rulings that result in a fair presentation of the evidence rather than wild speculation based upon unfounded accusations of wrongdoing.

In short, T.G. and her grandmother are entitled to a fair trial.   They did not receive one and this Court has the authority to rectify that injustice without requiring an appeal.

Dated: February 17, 2017        **KAHN, SMITH & COLLINS, P.A.**

                           */s/*_____

                           Francis J. Collins, Esquire (Bar No. 04272)
                           Jacqueline S. Togno, Esquire (Bar No. 19510)
                           201 N. Charles Street, 10th Floor
                           Baltimore, Maryland 21202
                           (410) 244-1010
                           fjcollins@kahnsmith.com
                           *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

     I hereby certify that on February 17, 2017, I served a copy of the foregoing document on

Defendants via the Court's CM/ECF system.

                           */s/*_____

                           Francis J. Collins, Esquire (Bar No. 04272)